AMAZIAH W. ARCHER, APPELLANT, vs. ISAIAH D. HART AND JOHN S. SAMMIS, APPELLEES.

1. If a party in a cause depending, enters into a bond to perform the decree or abide the judgment of the Court, it is intended to mean the Court which ultimately decides the cause.

2. An appeal is matter of right, if entered during the term of the Court at which the judgment is pronounced, or within ten days thereafter; and such appeal, when entered, suspends the judgment, sentence and decree appealed from; and if reversed, it is as if it had never existed.

3. Where a decree in Equity was in favor of a defendant, and the bond which he had given to perform the decree of the Court, was directed to be cancelled, on an appeal from so much of the decree as related to the principal matter, if the same be reversed, that portion of the decree directing the cancellation of the bond is also reversed: it is only accessory to the decree appealed from, followed it, and shared its fate.

4. A voluntary bond is valid as a common law contract, if it is entered into by competent parties, and for a purpose not prohibited by law, and is founded upon a sufficient consideration.

Appeal from the Circuit Court of Duval County.

This was an action of debt on bond executed by appellees, by which, after reciting "that whereas, the said Amaziah W. Archer and others have heretofore filed their petition before the Hon. Thomas Douglas, Judge of the Circuit Court of the Eastern Circuit of the State of Florida, and thereupon obtained an order to the Sheriff of Duval County, and caused to be arrested sundry persons of color, to wit: a boy called Dennis Bryan, also a girl called Mary Bryan, said colored persons and others being alleged in

TERM AT JACKSONVILLE, 1853.          235

Archer vs. Hart and Sammis.—Statement of Case.

said petition to be slaves and the property of the said petitioners : and whereas, the above named Dennis Bryan and Mary Bryan are now in the custody of the Sheriff of Duval County, and claim to be free persons of color, and ask to be discharged from the custody of the said Sheriff, (on bail as per written agreement between the attorneys of the parties petitioners and defendants,") it was conditioned that "if the said Dennis Bryan and Mary should appear before the said Judge of the Circuit Court, from time to time as may be required, and abide the decision of the issue upon the said petition as well as the further order of the Court, then and in that case the bond or obligation to be null and void, otherwise to remain in full force and virtue." The declaration alleges that Dennis, one of the persons of color above named, who had been declared to be a slave and the property of plaintiff, did not appear and abide the decision and order of the Court, as required by the condition of the said bond, but that he disappeared before the final determination of the cause, and was not then to be found.

The appellees, (the defendants in the Court below,) pleaded, 1st. That they had faithfully performed and complied with the condition of their said bond, and that Dennis did appear before the Circuit Court and abide its decision and order, until, by the sentence and decree of said Court, he was discharged from custody and dismissed without day. 2d. That the bond in question was ordered to be discharged and cancelled by the decree of the Circuit Court, and so much of said decree as directed the bond to be discharged and cancelled still remained in full force unreversed, no appeal having been prayed or prosecuted from the same.

The facts in the cause will appear in the following agreement of the parties :

It is agreed that this cause shall be argued as if upon is-
sue joined, the following special verdict had been duly
entered, and the Court shall proceed to pronounce such
judgment *nunc pro tunc*, as if the said verdict had been
duly entered and argued at the last fall term of this Court,
and either party may take an appeal or writ of error to the
next ensuing term of the Supreme Court :

" We, the jury, find the slave Dennis to be of the value
of nine hundred dollars, that upon the twenty-first day
of February, A. D. eighteen hundred and fifty, one of the
said plaintiffs filed a petition before the Honorable Thom-
as Douglas, Judge of the Circuit Court for the Eastern
Circuit of Florida, praying that the said slave Dennis, to-
gether with other slaves, formerly the property of Jacob
Bryan, deceased, should be taken into custody by the sher-
iff of Duval County as having been manumitted contrary
to the provisions of the Act of November 22, 1829; that
afterwards, to wit, on the following day, an order was is-
sued directed to the said sheriff, commanding him to take
the said slaves into his custody, and them safely to retain
until the further order of said Court.

" That such further proceedings were had upon the said
petition, that afterwards, to wit, at the May term of 1852,
of the said Circuit Court, the following order was entered:
' Now on this day came the said petitioners, by James W.
Bryant and John P. Sanderson, Esquires, their solicitors,
and the said Dennis Bryan, and Mary Bryan, being again
brought into Court by the sheriff aforesaid, and Samuel
Spencer, J. McRobert Baker, P. Fraser and Felix Living-
ston, appearing to oppose in this behalf upon the issue
*liber vel non*, raised by their plea heretofore put in, were
permitted by the Court to do so, and the solicitors of the
respective parties having entered into a stipulation in wri-
ting, that the said Dennis and the said Mary claimed as

TERM AT JACKSONVILLE, 1853.          237

Archer vs. Hart and Sammis.—Statement of Case.

slaves as aforesaid, may be discharged from the custody of the sheriff, on condition that a bond in the penal sum of four thousand dollars, payable to the petitioners, be filed, conditioned that the said Dennis and the said Mary appear before the Circuit Court from time to time as may be required by the Court, to abide the decision of the issue in this cause, and the further order of the Court. And it is further stipulated that the said bond may be given and received without prejudice to either party as to the question at issue, and that no advantage shall be taken by either party of any informality in this agreement, *nor in the said bond to be given by the said defendants,* but the same shall be enforced according to the true intent and meaning of the same as understood between the counsel for the parties, which is done, and said bond being duly filed, it is ordered accordingly. And on motion of the said petitioners, by their said solicitors, it is further ordered, that the issue of *liber vel non,* raised by the plea of the said Dennis Bryan and Mary Bryan to the said petition be tried by a jury upon the Common Law side of this Court, at the next term, according to the rules and principles governing the trial of issues in Common Law cases, and that the testimony be taken in the same manner as testimony is allowed by law to be taken in Common Law cases.'

"That afterwards, and upon the same day, the writing obligatory which is the subject matter of this suit, was duly executed and filed. That afterwards, such further proceedings were had upon the said petition, that upon the 26th day of November, A. D. eighteen hundred and fifty-one the following final sentence or decree was pronounced in the Circuit Court for the County of Duval, viz: 'Now on this day this cause came on to be heard upon the issue *liber vel non,* joined between the parties, and a statement of facts herein filed and argued upon between the

parties and by their counsel, and the said parties having waived a jury, and after argument by counsel and due deliberation by the Court, it is thereupon ordered, adjudged and decreed, that the said Dennis and the said Mary, in the said petition mentioned, are free persons of color and not slaves, and that the said Dennis and Mary be forthwith discharged out of custody, and that the bond heretofore given for their appearance in this cause, and executed by Isaiah D. Hart and John S. Sammis, be discharged and cancelled; and it is further ordered, adjudged and decreed that the said Sarah mentioned in the said petition, is a slave and not free, and that the said Sarah be sold by the sheriff of this County at public outcry, after due notice of the time and place of sale, and at the time and place and in the manner of sales under executions at law. And that the said sheriff pay the proceeds of said sale forthwith into the Registry of this Court, to abide the further order of this Court in the premises.'

" That afterwards, to wit, on the first day of December following, being within the ten days allowed by law, the following agreement and prayer for appeal were duly filed with the Clerk of the Circuit Court for said County of Duval, viz: This agreement witnesseth, that in the case of Amaziah W. Archer, *et al.*, against certain persons of color named Sarah Bryan, Dennis Bryan, and Mary Bryan, it is agreed by the undersigned, as attorneys for both parties, that in the appeals about to be taken by either party from the decision of the Circuit Court, made Nov. term, 1851, in said case, that the appeal bonds to be given by both parties shall be made payable to the Governor of Florida and his successors in office, for the use of such persons as may be interested therein, and that neither party shall take exception to the same upon that ground, but they shall be deemed a compliance with the statute in

such case provided, and that the costs heretofore accrued shall be equally divided between the parties. Entered into this 27th November, 1851.

F. LIVINGSTON,
*Atty. for Dennis, Mary and Sarah Bryan.*
J. P. SANDERSON,
*Atty. for heirs of Jacob Bryan, decd.*

" The bond having been duly filed in said cause, the solicitors for petitioners pray an appeal as to so much of the decree in said case as declares said persons of color, Dennis and Mary, free.          J. P. SANDERSON,
*Solicitor for Petitioners.*

' It is agreed by and between the undersigned solicitors in said cause that the foregoing prayer for an appeal be filed as of the first day of December, A. D. eighteen hundred and fifty-one, *nunc pro tunc.*

J P. SANDERSON,
*Solicitor for Petitioners.*
F. LIVINGSTON,
*Solicitor for Defendants.*

" And afterwards, upon the same first day of December, A. D. 1851, all the costs were paid, and an appeal bond was filed by the said Amaziah W. Archer, payable to the Governor of the State of Florida, and conditioned for the diligent prosecution of the said appeal, and the payment of all costs which might be adjudged against him in such appeal.

" And afterwards, at the February Term of 1852, of the said Supreme Court for the State of Florida, such proceedings were had upon the said appeal that the said Supreme Court reversed the decision of the Court below, in so far as it declared the said negroes, Dennis and Mary, to be free, and proceeding to render such judgment and decree as the Court below ought to have rendered, did ' further

order, adjudge and decree that the respondents, Dennis and Mary, have not sustained the issue of *liber vel non* made in the Court below, and are slaves for life, and the property of the appellants, and that they, the said Dennis and Mary, be delivered up to the custody of the appellants. And it is further ordered, that the appellants pay the costs of these proceedings, and that the cause be remitted to the Court below, with instructions to execute the decree of this Court in the premises.'

"And we, the jury, further find that several days after the rendition of the said decree of the Supreme Court at its February Term, the said slave, Dennis, absconded, and has never been delivered to said appellants, although a demand was duly made upon said defendants for the delivery of said slaves, on the day of the rendition of said last decree; and forasmuch as the jury are ignorant in point of law, upon the facts of the case, on which side they ought to find the issue, they do agree that if the Court should be of opinion that the said plaintiffs are entitled to recover the value of the boy Dennis, and that the condition of the said bond has been broken, then they find for the said plaintiffs the sum of four thousand dollars, to be discharged upon the payment of nine hundred dollars, the value of said boy Dennis, together with one cent for the damages of said plaintiffs, and also their costs in this behalf expended; but if the Court should be of opinion that the condition of the said bond has not been broken, and that the said plaintiffs are not entitled to recover, then the jury find for the defendants.

McQUEEN McINTOSH,
GEO. W. CALL.
*Attorneys for Defendant.*
J. P. SANDERSON,
*Attorney for Plaintiff.*

The Court below rendered judgment in favor of the defendants, from which the plaintiff appealed.

*J. P. Sanderson* for Appellant.

The questions now submitted by the pleas and special verdict, and presented to this Court, are :

I. Whether the conditions of said bond have been performed.

II. Whether the decree of the Court, directing the cancellation of said bond operated as a discharge to Hart and Sammis, the obligors ; or,

III. Whether the appeal taken did not operate as a *supersedeas*, as well to the part of the decree cancelling the bond as to the part declairing Dennis and Mary to be free and not slaves ; and

IV. Whether said decree, cancelling said bond, has not been reversed by the decree of the Supreme Court at its February Term, 1852, in said cause.

It is the duty of appellant to maintain and prove the affirmative of the third and fourth propositions and the negative of the first and second.

The statute, Thomp. Dig., 446, regulating appeals, provides, "That if any party feels aggrieved by a final judgment or decree, it shall and may be lawful for such party during the session of the Court in which such judgment or decree shall be pronounced or within ten days thereafter, to obtain an appeal to the Supreme Court, and an appeal obtained shall in all cases operate as a *supersedeas*."

The appeal was obtained within the ten days prescribed by statute, bond filed, and costs paid. There is no pretence that the appeal was not regularly taken, and operated as a *supersedeas* to the part of the decree declaring "Dennis and Mary to be free and not slaves," and I presume it will be conceded that the appeal suspended that part

31

of the decree. But it will be contended by counsel for defendants that the order of the Court directing the cancellation of the bond was not appealed from, and still remains of force, and that defendants were discharged from said bond by said decree, for such is the issue tendered by defendant's second plea.

Upon these two grounds the defendant's counsel have rested their defence.

I. Have the conditions of the bond been performed?

The conditions are as follows : " Now, if the said Dennis Bryan and Mary Bryan shall appear before the said Judge of the Circuit Court from time to time as may be required, and abide the decision of the issue upon the said petition, as well as the further order of the Court, then and in that case this bond or obligation to be void, or else to remain in full force, virtue and effect."

The principal condition of this bond is, that the said Dennis and Mary shall abide the decision of the issue upon the petition, and must mean the final decision on that issue. Have they performed that condition? The issue was finally decided by the Supreme Court at the February Term, 1852, and immediately thereafter demand was duly made for a surrender of said slaves : said slave Dennis had absconded, and the obligors have failed to obey the decision of the issue. The Supreme Court proceeding to render such judgment and decree as the Court below ought to have rendered, " did further order, adjudge, and decree that the respondents, Dennis and Mary, have not sustained the issue of *liber vel non* made in the Court below, and are slaves for life, and the property of the appellants, and that they, the said Dennis and Mary, be delivered up to the custody of the appellants."

The slave Dennis has not been delivered up as ordered and directed by said decree, and the condition of the bond

in this respect has been broken, and the plaintiffs are entitled to recover: and the condition of the bond has not been performed in this—he, Dennis, did not abide the further order of the Court below. The order and decree discharging and cancelling the bond, was not the further order of the Court. The further order of the Court was the order allowing the appeal. The allowance of the appeal, though taken by the parties, when taken under the statute becomes an order of Court, and suspends the whole decree. Therefore the obligors did not comply with this condition of the bond. The bond was given to abide the decision of the issue, and the further order of the Court: the last order of the Court was the appeal, which transferred the cause to this Court, and with it the bond as an incident to the issue.

The taking, the dismissal or withdrawal of an appeal is a judgment of the Court. Harder *et al.* vs. Stoval, 1 Kelly, 95, Index 359; Ball vs. Gardner, 21 Wend. 166, 1 N. Y. Dig., 326, § 8.

The term "Court," used in the condition of the bond, has been held to mean the "Court" which shall ultimately decide the cause. U. S. vs. Schr. Little Charles, 1 Brock., 380:

II. Did the decree of the Court directing the discharge and cancellation of said bond, operate as a discharge to Hart and Sammis, the obligors, or did the appeal taken operate as a *supersedeas* as well to the part of the decree cancelling the bond as the part declaring Dennis and Mary free and not slaves?

I. The order, judgment, and decree of the Court below discharging Dennis from custody and cancelling the bond, were uttered by the Court in one and the same breath, and together constitute but the judgment pronounced upon the issue joined. If no appeal had been taken, the bond was

244 SUPREME COURT,

Archer vs. Hart and Sammis.—Argument of Counsel.

cancelled and discharged by the judgment and decree declaring Dennis free, and not a slave, and no order cancelling said bond was necessary. That part of the decree is, therefore, mere surplusage, unnecessary, and void.

"A void judgment, quashing a forth-coming bond, may be wholly disregarded." Fellows vs. Griffin, 9 S. & M. U. S. Dig. 1848, 58, § 80.

If this view of the case be correct, it follows that Hart and Sammis were not discharged by said decree.

The appeal operated as a *supersedeas* to the entire decree. The prayer for an appeal is as follows : " The bond having been duly filed in said cause, the solicitors for petitioners pray an appeal as to so much of the decree in said cause as declares said persons of color, Dennis and Mary, free." This appeal carried up the whole case. This was a proceeding on the Chancery side of the Court, and as the Appellate Court is by law directed to proceed to render such decree or judgment as, upon the whole case, the Court below ought to have done, the whole cause before the Court below was carried up, and open to review. The decree and mandate of this Court in the cause, not only reversed the decree, but directed the slaves to be delivered up to the custody of the plaintiffs.

A Court of review gives such a decree as the Court below ought to have done ; and when the plaintiff below brings the appeal, the Court above not only refuses what is wrong, but decrees what is right, and models the relief according to its own view of the ends of justice and the exigences of the case. Gelston vs. Codwise, 1 J. C. R., 182.

And on an appeal from Chancery, the decree and order of the Court of Errors becomes, to the Court below, the law of the case, and the party can have no further relief

then, than what is administered by the decree of the Court above." *Ibid.;* 2 Fla. R., 276; 4 Fla. R., 357.

The appeal then carried up not only the issue joined, but the whole cause, and especially the bond, which was coupled with and dependent upon that issue, for the appeal opens the whole cause, though taken from a part only, and suspends the whole judgment of the Court below. Colby's Prac., 306; 3 Bouvier Ind., 70.; Allison vs. Chaffin, 8 Ga., 330, cited Index 40, § 12.

An appeal, from the moment it is made, suspends the execution of the decree; and if taken within the time presented by statute has relation back to the day of the rendition of decree. Penhallow vs. Doan, Adm'r., 3 Dall., 89, 99, 1 Arch. Prac., 241; Colby's Prac., 306; Stewart vs. Preston, 1 Fla. R., 8.

The appeal operates from time of motion, and the filing of the bond will have relation back and bind the parties from the time of notice. 1 Arch. Prac., 241; Hawkins vs. Jones, 1 E. C. L. R., 111; 2 Strange, 867, 1186; Edward's Treatise, 148, n,; Salk., 321, Perkins vs. Woolaston.

The 4th assignment of error, alleges error in deciding that the bond was a creation of the Court.

The bond was made and executed by agreement of the parties to the bond, as will appear by the facts contained in the special verdict—no agreement was made with Dennis—he is no party to the bond—he was treated as a slave —and entered into for his benefit by Hart and Sammis. It was an act of plaintiffs and defendants, the obligors, and they only had power to cancel the contract, and this Court is called upon to enforce the agreement.

This bond violated no public policy or private morality, but was appropriate to the execution of the laws and a proper adjustment of the rights of the parties in the cause. Had the original suit been commenced by an attachment

and this suit brought to recover on an attachment bond, would this Court have doubted but that the bond, in the event of an appeal, would hold good and abide the decision in the Appellate Court? Or, suppose suit had been commenced by attachment, and Dennis taken into custody under levy of the writ of attachment, and the obligors had come forward and entered into bond precisely under the conditions of this bond, and the Court below had rendered judgment for the defendant, or, as in this case, directed a surrender of the property, and a cancellation of the bond, and an appeal had been duly taken by the plaintiffs, I ask if this Court would doubt for a moment but that the appeal would suspend the judgment and carry with it the bond given for the forthcoming of the property? It must of necessity operate in this manner, for the plaintiffs in attachment, after judgment against them, could not direct a new levy and hold the property to respond to a final decree in the Court above in their favor. If the contrary is held, he would be without remedy—the property in the meantime might be removed from the State and the attachment law would be to him a dead letter upon the statute book. Stephens vs. Baird, 9 Conn., 274, cited N. Y. Dig., 64.

This was a bond voluntarily entered into by the obligors, and binding upon them—a bond voluntarily given, and though not prescribed by law, is a valid instrument upon the parties in point of law. U. S. vs. Tingry, 5 Peter's, 115 ; U. S. vs. Bradly, 10 Peter's, 343, cited Peter's Dig.; Franklin vs. Pendleton, 3 Sand. S. Ct., 572; U. S. D. 11, 78, § 39 ; 1 Brock., 383.

A voluntary bond may be bad as a statutory bond, but good at Common Law. Stephens *et al.*, vs. Crawford, 1 Kelly, 583, Ind., 94, § 5 ; Justices, &c. vs. Ennis, 5 Ga., 569, Ind., 95.

A bond which violates no public policy or private morality, which is appropriate to the execution of law, is *valid*, and may be entered into and recovery had thereon, though there be no statute expressly authorizing the execution of such bond. The Governor vs. Allen, Kin. Law Com., 1850, § 51.

It is objected that there has been no proceedings in the Court below to carry into execution the mandate of the Court above. This comes too late, after plea, &c. Lee vs. Moore, 12 Miss., 458, U. S. D., 11–79, 50; 1 N. Y. D., 328, § 37–38.

Upon a forthcoming bond, notice is all that is necessary. Mapp vs. Thompson, 9 Ga., 42, Ind. 923, 17; 2 U. S. Dig., 458, § 16.

Exceptions to the want of proper parties or to the declaration, comes too late after plea. The issues are performance and discharge—no exceptions taken as to bond, &c. 5 U. S. D., 922, § 12; Colby's Prac., 14, 187; U. S. Dig., 1848, 366, § 2, 7, 10, 17.

Too late to raise objections in the Court of Errors, which were not raised by the pleadings in the Court below. Franklin vs. Osgood, 14 J. R., 527, cited J. Dig., 181, § 159.

Too late to object to the form of appeal after appeal has been answered. Rodgers vs. Cruger, 3 J. R., 564, cited J. Dig., 180, § 143.

A party cannot take advantage of an ambiguity in a traverse after having taken issue upon it. 4 Harrison's Dig., 2566.

The regularity of the appeal and judgment in the other case cannot thus collaterally be called in question.

A replevin bond informally executed, if voluntarily executed, cannot be avoided on that account. Morse vs. Hodson, 5 Mass., 314; Minot. Dig., 108, § 20.

If a party who is bound to perform a condition, disables himself, this is a breach. 2 Bac. Ab., 310.

Coke has it—A man shall never take advantage of a condition, where the non-performance cometh by his own act or default. Coke, 206, 209.

*G. W. Call* and *McQueen McIntosh* for Appellees.

I. To constitute a breach of the bond there must have been a return of *non est inventus*. Pearsull vs. Lawrence, 3 J. R., 514, cited in 1 Dig. N. Y. R., 132–133; Colby's Prac., 146; Collins vs. Mitchell, 3 Florida, 11.

2. The judgment of 26th Nov. 1851, exhausted the requirements of the bond. Mills vs. McCoy, 4 Conn., 406, cited in 1 Dig. N. Y. Rep., 131; Butler vs. Bissell, 1 Root 102, cited in 1 U. S. Dig., 362, § 378; Sopeman vs. Henderson, 4 Barr., 231, cited in 1 U. S. Dig., 74, § 4.

II. The order of 26th Nov., 1851 directed that Dennis should be discharged from custody, and the bond cancelled *eo instanti* this was done; no appeal can *undo* what has been done. Hawkins vs. Jones, 5 Taunton, 204; Ex'rs. Brasher vs. Cortlandt, 2 John., 505; Perkins vs. Woolaston, 1 Salk., 321; S. C., 9 Peter. Abr., 25; Burr vs. Burr, 10 Paige, 169; Clark vs. Clark, 7 Paige, 607.

III. But the Supreme Court did not reverse the order cancelling the bond. Heirs of Bryan vs. Dennis, 4 Flor., 450–6.

IV. No appeal lay from the order of 26th Nov., 1851, and the action of the Supreme Court is not binding upon these defendants not privy to the suit.

1. This whole proceeding was *ex parte*, and an exercise of the summary powers of the Court. Fraser vs. Livingston, 1 Flor., 400–401; 2 Chit. Arch. Prac., 1194; 2 How., 240; Colby Pr., 306.

2. The order of 26th Nov. was not final, and therefore

no appeal.    Putnam vs. Lewis & Wife, 1 Flor., 474; Bellamy vs. Bellamy, 4 Flor., 254, 257.

The bond is wholly illegal and void, and cannot now be enforced.

1. This point appearing in the record is good upon writ of error.    1 Chitty's Pl., 661–2, 484; 1 Harrison's Dig., 527.

2. This bond is a bail bond, and contrary to the policy and express enactment of our law, and is taken in a cause not authorized by law.    Thomp. Dig., 326, 532–3; 1 Sup. Pet. Abr., 128; Colby's Prac., 306; 1 U. S. Dig., 74, § 8, cites 2 Barr., 492.

3. It should have been made payable to the sheriff.    1 Breese, 51; 4 Bibb., 505; Hardn., 501; 1 Met. & Per., 352, Wright, 180.

4. It should have been executed by the principal as well as the surety.    17 Mass., 591.

5. The bond is void for uncertainty in the designation of the obligors.

THOMPSON, J.:

In a controversy which arose in the Circuit Court sitting in Duval County in relation to the slavery or freedom of certain negroes, an issue was directed to be made up and tried at a succeeding term of the Court; and in the meantime, by consent of the claimants, of whom the present appellant was one, two of the persons so claimed to be slaves for life, and then in custody, were delivered to the respondents upon their entering into bond in the penalty of four thousand dollars, payable to the appellant by name, with the addition of the terms " and others," conditioned that Dennis and Mary, (the persons who were claimed to be slaves, and were asserting their freedom,) should appear before the Judge of the Circuit Court from time to time as

32

250      SUPREME COURT,

Archer vs. Hart and Summis.—Opinion of Court.

may be required, and abide the decision of the issue upon the petition, as well as the further order of the Court. The issue so made up, was determined in favor of Dennis and Mary in the Circuit Court; they were declared to be free, and the bond entered into by the respondents was ordered to be cancelled. From this judgment of the Circuit Court an appeal was prayed by the claimants to this Court, from so much of the judgment of the Circuit Court in said case as declared said persons of color, Dennis and Mary, to be free; which appeal was allowed and perfected within the term of ten days prescribed by law.

In this Court, the portion of the decree appealed from was reversed and set aside, and proceeding to give such decree as the Circuit Court should have given in this particular, this Court declared that the said Dennis and Mary were slaves for life, and the property of the claimants, and ordered that they should be delivered up to the custody of said claimants. Soon after the decree was reversed in this Court, demand was made upon the respondents for the slave Dennis, but the demand was not complied with; and it further appears, that at or about this time he absconded, and has not since been arrested.

Suit was brought upon the bond by the present appellant, whose name only appears on the face of the instrument as the obligee thereof, against the respondents, who are the obligors, assigning as a breach that the said Dennis did not appear from time to time, &c., and did not abide the decision of the issue upon the petition, as well as the further order of the Circuit Court, but on the contrary absconded, &c. By the subsequent pleading, the defence is made to rest upon two grounds:

1st. That Dennis was only to appear before the Circuit Court, that he did so appear, and was discharged without day by the decree of said Court of the 26th of Nov., 1851.

TERM AT JACKSONVILLE, 1853.    251

Archer vs. Hart and Sammis.—Opinion of Court.

And, 2dly, That by the decree of the Circuit Court, the bond in question was ordered to be discharged and cancelled, that such portion of the decree was not appealed from, and remains in full force and unreversed.

Upon a special verdict finding the facts which are above briefly stated, the Circuit Court gave judgment for defendants; the principal ground of error assigned is, that the Court erred therein, and that the judgment should have been for the plaintiff.

In the decision of this case, we do not deem it material or necessary to consider in their order the numerous points made and discussed at the bar upon the argument, because the grounds upon which we put our judgment herein will be found to have met and included all the positions taken by counsel which were open to discussion.

The main grounds upon which the respondents rely, in support of the judgment of the Court below, are founded on the terms of the condition of the obligation sued upon, and the effect of the appeal prosecuted by the present appellant from the decree of the Circuit Court in the original cause, made and passed on the 26th November, 1851, which declared Dennis and Mary to be free.

It has been argued with much zeal by the counsel for the respondents, that the decree of the Circuit Court alluded to, exhausted the requirements of the bond, that Dennis was only to appear from time to time before the Judge of the Circuit Court, and that when the decree was pronounced in his favor, and the bond declared to be discharged and cancelled, every thing was accomplished which the respondents had bound themselves to the performance of. This is certainly a very technical view of the question, even if correct in point of law; but it is most clearly erroneous. In every case where it becomes necessary that any of the parties should enter into a bond for the perfor-

mance of the decree of the Court, the condition provides in terms only that the party shall answer the decree, sentence or judgment of the Court in which the cause is depending; no provision is made for the event of a writ of error or appeal, but in such case the law supplies the omission in every case where the writ of error or appeal arrests the execution of the decree, sentence or judgment of the inferior Court, and suspends its force and energy until the question is examined in the appellate tribunal. Thus in the case alluded to, a decree had been pronounced upon the equity side of the Court, with which the losing party was dissatisfied; assuming that an appeal could be taken from that decree to this Court, if it was taken in due time it arrested the execution of the decree, suspended its effect and force as a judgment, and removed the cause to this Court by force and operation of law. In such case the law substituted the judgment of this Court for that of the Circuit Court, and such rule of law entered into and formed a part of the contract as completely and effectually as if it had been inserted therein in terms.

By the Act of February 11th, 1832, appeals from the equity side of the Circuit Court operate as a *supersedeas* in two cases :

First. When the appeal is entered as in other cases as provided by the general law of February 10, 1832, which is during the term of the Court in which the decree is pronounced, or within ten days after adjournment; and, secondly, when, being taken within two years after it is pronounced, a Justice of this Court shall allow its operation as such, upon giving bond and security as required by law, (Thomp. Dig., 462, 446.) The first named *supersedeas* is obtainable as a matter of right, subject to no condition except that of giving the security required by law; and the other rests in the exercise of the sound discretion of the

Judge. At law, no execution can issue upon the judg-
ment of the Court until after the lapse of ten days from
the adjournment of the term, except in a certain special
contingency to be made known to the Court by affidavit of
the plaintiff; consequently the judgments rendered during
the term are ineffectual until after the expiration of the
time limited; if an appeal is taken within the time, the
execution is superseded, and the force of the judgment sus-
pended until the appeal is determined. And so is the rule
in equity. By the Act of Nov. 7, 1828, § 28, no decree in
equity pronounced by the Judge could be engrossed and
signed until after the lapse of thirty days, and not then, if
the decree had been appealed from, or a petition for re-
hearing filed. And it is further declared that no process
shall issue on any proceedings be had on any final decree
or order, until it had been engrossed and signed as direc-
ted, and filed in the clerk's office. (Thomp. Dig., 461.)
The effect of the Act of 1828, was to allow thirty days for
the unsuccessful party to enter his appeal, during which
time the decree pronounced was not effectual, and the ap-
peal if taken within the limitation, operated as a further
suspension until the appeal was heard.

The Act of 1832, before cited, restricts the party to ten
days, within which to enter his appeal, and this is the only
change.

The authorities cited by the counsel for the respondent
lay down the rule correctly, but they are inapplicable to
the present case. If the execution of the decree had been
commenced, the *supersedeas* would arrest the proceedings
at the stage in which they were when the *supersedeas* was
allowed, but the execution of the decree in the case of Den-
nis and Mary had not yet commenced, and could not by
force of law have been begun when the appeal of Archer
was taken, he having pursued his remedy within the ten

254 SUPREME COURT

Archer vs. Hart and Sammis.—Opinion of Court.

days, and while the decree was inactive. If the party had suffered the time to have passed, and the execution of the decree had been consummated by the discharge of the boy Dennis, and the cancellation of the bond, and he then had prayed an appeal, and obtained an order for a *supersedeas*, such order would not have retroacted so as to make void what had been done in pursuance of the decree.

In the case of the United States vs. the schooner Little Charles, depending in a District Court of the United States, the vessel, which was under arrest, was released upon a bond to perform the decree of the Court. In the District Court the vessel was acquitted, but on appeal the sentence was reversed, and the vessel was condemned by the sentence of the Appellate Court. Then, as in this case, it was contended that the condition of the bond was not broken; that it was to perform the decree of the Court, which could only mean the District Court, and by that decree the libel was dismissed. But Chief Justice Marshall said: "This objection must search for other support than is furnished by the merits of the cause. The "bond was intended to be substituted for the vessel, "and to be acted upon as the vessel would have "been acted upon, had it remained in the power of the "Court. I think myself justified, then, by authority and "by reason, in construing the general term 'Court,' which "is used in the condition, as meaning the Court which "shall ultimately decide the cause." 1 Brock. R., 382–3.

This case is directly in point. Here the boy Dennis was in custody, the bond was entered into to procure his enlargement, the respondents undertaking that he would abide the judgment of the Court, and to afford to the claimants as full and perfect a remedy as if the slave had remained in custody. If the slave had remained in custody, no one will pretend to say that he was entitled to claim

TERM AT JACKSONVILLE, 1853.    255

Archer vs. Hart and Emmis.—Opinion of Court.

the execution of the decree until the time had elapsed within which the adverse party was allowed to enter his or their appeal, for the law is explicit that no process shall issue or any proceedings be had on any final decree until it is engrossed and signed as directed, and filed in the Clerk's office ; and this cannot be done at an earlier day than ten days after the decree is pronounced. Upon what principle, then, is it that the rights of the claimants were changed by the substitution of the bond for the person of the slave? We are not aware of any, and none has been suggested in the argument. If authority be wanting to show the effect of an appeal, it will be found in Packman's case, 6 Co. R. 18, b. In that case it was held that when an appeal is taken from a sentence or decree allowing a probate of a will, or granting letters of administration, if the sentence or decree is reversed, all intermediate acts of the former executor or administrator are ineffectual, because the appeal suspends the former sentence, and on its reversal, it is as if it had never existed ; but if it is otherwise, if the probate or administration is revoked upon citation, when the grant was only voidable, for the citation is in the nature of a new suit.

In the case under discussion, the conclusion cannot be avoided that the appeal of Archer and others against Dennis and Mary suspended the decree of November 26, 1851, in the original cause, and that decree, so far as appealed from, having been reversed, it is as if it had never existed, as if it had never been pronounced by the Circuit Court, and in its place and stead was substituted by force and operation of law, the decree which was made by this Court upon the appeal, and it therefore results that the condition of the bond is broken.

Another point assumed in the argument, and which is said to have formed the ground of decision in the Court

below is, that the appeal of Archer and others from the decree of the 26th November, 1851, was restricted to that point alone which declares Dennis and Mary to be free persons, and did not therefore embrace the direction that the bond in question shall be discharged and cancelled.

It is undoubtedly true that a party by his appeal may complain of a part of a decree pronounced in a Court of Equity, and that while the whole case is open to the respondents under the limitations established by this Court in the Southern Life Insurance & Trust Company vs. Cole, (4 Fla. R.,) yet so far as the appellant is concerned, the duty of the appellate tribunal is limited to the matters complained of. Is this the case here? A reference to so much of the record of the original suit as is found in the special verdict in this case, will furnish a ready answer. Several persons were, in the original suit, claimed by Archer and others to be slaves, and to be their property. As to Dennis and Mary the claim was not sustained, and the bond, which had been substituted for their persons, was declared to be discharged and cancelled; and this judgment formed the first clause of the decree. Another person was found to be a slave, and so declared by a subsequent clause, with a direction for sale, &c. The appeal, in the terms in which it was prayed, was from " so much of the decree in said cause as declares said persons of color, Dennis and Mary, to be free;" and this, we conceive, carried with it all that portion of the decree which related to Dennis and Mary, and their condition. The direction, in the same clause, as to the cancellation and discharge of the bond, was but the consequence of the declaration that they were free; it was ancillary thereto and dependent upon it, and precisely analagous to the case of an award of process to a complainant to carry out and effectuate the relief awarded by the decree; or to the case where a right in

real estate is ascertained by the decree of the Court to be in a complainant, and the defendant is decreed to convey in accordance with the title ascertained by the decree.

In all such cases, the process and the conveyance are but accessories to the principal relief, and cannot subsist without it. Why should the bond be cancelled and discharged but because Dennis and Mary were ascertained and declared to be free by the decree? The matter is so plain that any attempt by argument further to elucidate it, would be vain and futile. The direction was but ancillary and accessory to the principal direction, and followed it, and shared its fate. Another position assumed is, that this Court had not jurisdiction of the appeal from the decree in the original cause, for two reasons: 1st. Because the proceedings were *ex parte*, and, 2d, because it was not a final judgment, and therefore, as against these respondents, the decree of this Court has no validity.

A very serious question presents itself, whether if this Court assumes jurisdiction of and decides an appeal or writ of error, there is any power or authority in this or any other Court to review the judgment, and declare the proceedings to be *coram non judice* and void? We are not disposed at this time to claim that power and authority for this Court after the term in which the judgment was pronounced has been closed by adjournment. But it is unnecessary to pass upon this question, for even if this Court possessed the power to pronounce its own judgments nullities, and to disregard them, and could do so in favor of parties or privies, the points are not well taken. We know of no prohibition to the jurisdiction of this Court, because the proceeding was *ex parte*. Causes often proceed *ex parte*, and this Court reviews the judgments pronounced therein. In every case where a plaintiff pursues his remedy at law, upon a default, and in equity, upon an

33

order to take a bill *pro confesso*, the Court below proceeds *ex parte*, and the judgment or decree may be and is reversed in this Court. But the proceeding alluded to was not in point of fact *ex parte*—the persons who were claimed to be slaves asserted their freedom, and the humanity and justice of the law as administered by the Courts, allowed them, *pro hac vice*, the *status* of free persons to enable them to make that right clear, and to obtain all the benefits to result from that condition if they could establish it, and thus there were both plaintiffs and defendants, the slaves holding the affirmative.

The authorities cited at the bar upon this point relate to the summary jurisdiction of Courts, and are inapplicable. As to the other point that the decree was not final, the decision of this Court in Bellamy vs. Bellamy, 4 Flor., R., 242, 258, shows that it was final. If the parties had waited until the money arising from the slave directed to be sold, had been distributed under order of the Court, they would have been subjected to irreparable injury; the bond would have been cancelled and discharged, and the slaves eloigned before they could have had an opportunity of having the error redressed in this Court. The case is clearly within the exception recognized in the decision quoted, and also in the case of Forgay vs. Conrad, 6 How. S. C. Rep., 201.

The only remaining point to be considered, is the position assumed by respondents, that the bond in question is wholly illegal and void, and cannot be enforced. It would be sufficient here to say that the point does not arise in the case, the defence of illegality of the bond declared on not having been presented by plea. By Reg. Gen. of Jan. Term, 1847, title Pleadings in particular actions, § 2, Art. 1, it is laid down thus : "In debt on specialty or covenant, "the plea of *non est factum* shall operate as a denial of

" the execution of the deed in point of fact only, and all " other defences shall be specially pleaded, including mat- " ters which make the deed absolutely void, as well as " those which make it voidable." But as this objection was not presented, and the point was argued with much zeal on both sides, we are disposed to consider and pass upon it, as if it were regularly presented. We are clearly of opinion that the bond in question is neither a bail bond nor a replevin bond, nor a statutory bond, and therefore the authorities cited in the argument in relation to such instruments are not applicable, but we consider it as a voluntary bond, good and valid at Common Law, provided it is entered into by competent parties, and for a lawful purpose, not prohibited by law, and is founded upon a sufficient consideration. United States vs. Tingey, 3 Peter's R., 115 ; United States vs. Linn, 15 Peter's R., 311.

There is no allegation that the parties to the instrument rest under any incapacity to contract ; that the respondents Sammis and Hart were incompetent to sign, seal and deliver the obligation, or that Archer was under any disability to accept and receive it, and we must consider them able to contract with each other. It is for a lawful purpose—that is, it does not appear that the objects and purposes of the instrument were in violation of any positive rule, or infringed any policy of the law. Nothing has been alleged in the argument as tending to show a violation of any rule of law, except that urged upon the hypothesis that the instrument in question was a bail bond. That it is not of this character, is so clear that it is only necessary to state it ; no argument could demonstrate it more fully. Although it was conditioned for the appearance of Dennis and Mary, it was not to answer any debt or sum of money claimed to be due and owing from them to Archer and others, but to abide the order and decree of the Court

on the question of their slavery or freedom, and is therefore not within the letter or spirit of § 5 of the Act of November 23, 1828, which declares that "no person shall be required to give bail for his or her appearance to answer any original writ or summons emanating from a Court of Law."

That the contract was founded upon a sufficient consideration has not been denied, and indeed it cannot be questioned; for admitting that the respondents derived no profit or advantage therefrom, yet if there be detriment or loss to the obligee, it is sufficient. Dennis and Mary were claimed to be the slaves of Archer and others, which claim has been sustained by this Court; Archer and others consented to the bailment or delivery of said slaves to the respondents, accepting the bond in their place and stead. This is a sufficient consideration to support the contract, and hence the deduction that the instrument sued upon is a good and valid Common Law contract, which the Courts can and ought to enforce.

We believe that the view of the case which we have presented in this opinion covers and disposes of every point made in the argument, and that it only remains to declare the evident conclusions of law therefrom, that the judgment of the Court below is erroneous and should be reversed, and that a judgment should be entered in this Court upon the special verdict for the plaintiff and appellant. It is accordingly so ordered.