CHOW LOY v. UNITED STATES.

(Circuit Court of Appeals, First Circuit. November 23, 1901.)

No. 402.

1. CHINESE EXCLUSION—PROCEEDINGS FOR DEPORTATION—TAKING OF APPEAL.

Under section 13 of the Chinese exclusion act of September 13, 1888 (25 Stat. 476), which provides that any Chinese person convicted before a commissioner under the act "may, within 10 days from such conviction, appeal to the judge of the district court for the district," such an appeal may be taken by a notice given to the commissioner orally within the 10 days and entered of record. When notice is so given, it is not necessary that the matter should be presented to the judge within the 10 days to preserve the appellant's right to a hearing on review.[1]

2. SAME—APPELLATE TRIBUNAL—CONSTRUCTION OF STATUTE.

The right of appeal given by section 13 of the Chinese exclusion act of September 13, 1888 (25 Stat. 476), which provides that "any such Chinese person convicted before a commissioner of a United States court may, within 10 days from such conviction, appeal to the judge of the district court for the district," is to the judge, as a special tribunal, and not to the district court.

3. SAME—ABANDONMENT OF APPEAL—DISCRETION OF JUDGE.

The proceeding for the deportation of a Chinese person under Act Sept. 13, 1888 (25 Stat. 476), being anomalous and of a summary character, in the absence of any provision fixing a time within which an appeal from the decision of a commissioner shall be heard by the district judge it is within his discretion to determine when the delay in bringing the matter before him for hearing is such as to amount to an abandonment of the appeal.

4. HABEAS CORPUS—GROUNDS FOR RELIEF—DEFECTS IN COMMITMENT.

Where sufficient ground for the detention of a prisoner is shown, he cannot be discharged on a writ of habeas corpus because of defects or irregularities in the form of commitment.

[1] Citizenship of Chinese, see notes to Gee Fook Sing v. U. S., 1 C. C. A. 212; Lee Sing Far v. U. S., 35 C. C. A. 332.

Appeal from the Circuit Court of the United States for the District of Maine.

John S. Richardson and R. C. Moore, for appellant.

Isaac W. Dyer, U. S. Atty.

Before COLT, Circuit Judge, and ALDRICH and BROWN, District Judges.

BROWN, District Judge. This is an appeal from an order of the circuit court of the United States for the district of Maine dismissing the petition of Chow Loy for a writ of habeas corpus. 110 Fed. 952.

The appellant, Chow Loy, was arrested May 13, 1901, under the provisions of "An act to prohibit the coming of Chinese laborers to the United States," approved September 13, 1888. 25 Stat. 476. After a hearing, the United States commissioner, on May 23, 1901, found and adjudged that the said Chow Loy is a Chinese person, and is not entitled to be or remain in the United States; that the said Chow Loy is a citizen or subject of no other country than China; and it was ordered that the said Chow Loy be removed from the United States to the empire of China. The commissioner's record contains, also, the following entries:

"May 24. Copy of judgment and warrant to remove issued.
"May 31. Levi Turner, Esq., appears and gives notice of appeal.
"July 3. Levi Turner, Esq., withdraws appearance.
"July 11. John S. Richardson, Esq., of Boston, offers to appear and prosecute appeal."

By section 13 of the act it is provided:

"Any such Chinese person convicted before a commissioner of a United States court may, within ten days from such conviction, appeal to the judge of the district court for the district."

The only act done by the appellant within the statutory period of 10 days was that proven by the following extract from the commissioner's record:

"May 31. Levi Turner, Esq., appears and gives notice of appeal."

We have first to inquire whether the appellant did, within 10 days, appeal to the district judge, within the meaning of the act.

As the hearing upon deportation proceedings is of an anomalous and summary character, we are of the opinion that there should be no stricter requirement in regard to procedure than is necessary to make it appear that the party asserted and claimed his right. A positive right is given him by the statute. If he has seasonably asserted this right, it should not be defeated by a failure to take proceedings analogous to those prescribed for the taking and perfection of appeals or writs of error. In Fong Yue Ting v. U. S., 149 U. S. 698, 728, 729, 13 Sup. Ct. 1028, 37 L. Ed. 918, it was said:

"No formal complaint or pleadings are required, and the want of them does not affect the authority of the judge, or the validity of the statute."

If we look to the practice upon ordinary appeals to furnish us guidance by analogy, it will appear that an appeal is "taken" in the lower court.

In Brown v. McConnell, 124 U. S. 489, 490, 8 Sup. Ct. 560, 31 L. Ed. 496, it was said:

"An appeal to this court in a proper case is a matter of right, and its allowance is in reality nothing more than the doing of those things which are necessary to give the appellant the means of invoking our jurisdiction. A writ of error is the process of this court, and it is issued, therefore, only upon our authority; but an appeal can be taken without any action by this court. All that need be done to get an appeal is for the appellant to cite his adversary in the proper way to appear before this court, and for him to docket the case here at the proper time. * * * If an appeal is taken by the action of the court in session before the end of the term at which the decree is rendered, no formal citation is necessary, because, both parties being constructively in court during the entire term, they are charged by law with notice of all that is done in the case affecting their interests. But, if the necessary security is not taken until after the term, a citation is required to bring the appellee before us, although, if the case is docketed here in time, it will not be dismissed at the return term until an opportunity has been afforded the appellant to give the requisite notice. The appeal taken in open court, if docketed here in time, gives this court jurisdiction of the subject-matter, and invests it with power to make all orders, consistent with proper practice, which are needed in furtherance of justice. This subject was fully considered in Hewitt v. Filbert, 116 U. S. 142, 6 Sup. Ct. 319, 29 L. Ed. 581."

We are of the opinion that the proceedings before the commissioner after judgment are sufficient to show that a claim of appeal was made within 10 days. The case which we have cited seems to be an express authority for the position that an appeal can be taken without any action by the appellate court. We further think that the 10 days provided for taking the appeal was in this case analogous to a term of court in an ordinary case, and that an appeal orally taken and recorded within that time by the commissioner constituted a sufficient notice to the appellee of the pendency of an appeal. We are further of the opinion that no citation to the appellee was necessary, and that it was fairly chargeable with notice of all that was done in the case during this period of 10 days. We see no reason for incumbering this proceeding with any more technicalities than are necessary in the case of appeals orally taken, in a court in session, before the end of the term. The statute makes no provision as to when an appeal shall be heard by the judge of the district court, nor as to when it shall be presented to him. As the appellant has the full period of 10 days within which to appeal, if such an appeal can be taken solely by action before the commissioner it would seem to follow that he can be deprived of no part of this time for taking the appeal by a requirement which would make him take it in season to present it to the judge within the period of 10 days.

In Credit Co. v. Arkansas Cent. R. Co., 128 U. S. 258, 261, 9 Sup. Ct. 108, 32 L. Ed. 449, it was said:

"An appeal cannot be said to be 'taken,' any more than a writ of error can be said to be 'brought,' until it is in some way presented to the court which made the decree appealed from, thereby putting an end to its jurisdiction over the case, and making it its duty to send it to the appellate court. This is done by filing the papers, viz. the petition and allowance of appeal (where there is such a petition and allowance), the appeal bond, and the citation."

It was said, also:

"Of course, if the appeal is allowed in open court and entered in the minutes, no further service is required."

In Edmonson v. Bloomshire, 7 Wall. 306, 311, 19 L. Ed. 92, it was said:

"The prayer for the appeal, and the order allowing it, constituted a valid appeal."

In Evans v. Bank, 134 U. S. 330, 10 Sup. Ct. 493, 33 L. Ed. 917, it was said that, under the rule, it is the duty of an appellant to docket his case and to file the record in the appellate court within the first six days of the term; and, if this is not done, the appellee may have the case docketed and dismissed; and, if the case is not so docketed and dismissed by the appellee, the appellant is in time if the record be filed during the return term.

In Brooks v. Norris, 11 How. 207, 13 L. Ed. 666, it was said that "the writ of error is not brought, in the legal meaning of the term, until it is filed in the court which rendered the judgment."

In Seymour v. Freer, 5 Wall. 822, 18 L. Ed. 564, it was said:

"What is essential to an appeal is allowance, citation to the appellees, or equivalent notice, or waiver, and the bringing up of the record at the next term of this court."

We think that an allowance of the appeal by the commissioner was not essential. The commissioner was not acting as a court of record, had no clerk, and no allowance was necessary as a direction to a clerk to send up the record. Had there been an entry of an allowance by the commissioner, that would have afforded merely additional evidence that a right had been claimed. Moreover, no bond or security was required, as the appellant was in actual custody. While the question is not altogether free from doubt, we think the sounder view, in proceedings of this character, is that, if the Chinese person asserts his claim of right within the 10 days, he has appealed to the district judge within the fair meaning of the statute.

Assuming, then, that an appeal was taken, the next question for consideration is whether the district judge erred in dismissing the appeal for abandonment. The district judge said, in his opinion dismissing the appeal, that it was not brought to his notice till late in July, a few days before the hearing. The petition to the circuit court for the writ of habeas corpus stated that the pendency of the aforesaid appeal had been called to the attention of the district judge several days previous to the 30th day of July, the exact date not being known to the petitioner. It is apparent that no steps whatever were taken to procure a hearing by the district judge during the month of June, and that nothing was done until the latter part of July, except that on July 3d Levi Turner, Esq., appeared before the commissioner and withdrew his appearance, and that on July 11th John S. Richardson, Esq., of Boston, appeared before the commissioner and "offers to appear and prosecute the appeal." In ordinary cases of appeal, where the appellant fails seasonably to docket his case, the appellee may do so for the purposes of dismissal.

We think it follows, of necessity, that the district judge to whom the appeal is to be made has power not only to hear the case, but also to decide whether or not there has been such an abandonment of the appeal as warrants its dismissal. The statutes regulating appeals have no application to the present case, save as they afford some illustrations of the general principles to be observed.

It is contended for the appellant that the appeal provided by section 13 of the act is an appeal to the district court; that, therefore, the appellant might present his appeal at any time within the ensuing term of court. The appellant relies upon U. S. v. Gee Lee, 1 C. C. A. 518, 50 Fed. 271, 273 (April 18, 1892), in which the circuit court of appeals for the Ninth circuit held that a writ of error could be had to the district court to review its decision in a deportation case, saying:

"If, under the circumstances, the words 'the judge of the district court for the district' can be held equivalent to the words 'the district court for the district,' a writ of error will lie from this court to review the judgment. We are of the opinion that the statute should be so read. The learned judge of the district court, from the allowance by him of the writ of error, evidently so thought. Every argument of convenience and utility favors this conclusion. Uniformity of decision in a very important matter will thus be secured.

" 'Judge of the district court' and 'district court' are not, strictly speaking, convertible terms. But they are so in a popular sense, and it is safe to assume that congress, in the use of the former phrase in this connection, intended to give the party an appeal to the district court of the district."

With due respect to the decision of this learned court, we find ourselves unable to agree with its conclusion that the appeal provided was an appeal to the district court.

The circuit judge, in his opinion denying the petition for the writ of habeas corpus, says:

"Inasmuch as section 13 provides that the warrant issued on the complaint which the section authorizes may be made returnable 'before any justice, judge or commissioner of a United States court, or before any United States court,' and for an appeal only in case the warrant is returned before a commissioner, it would seem to follow that the judge of the district court acts on appeal in the same capacity as though the warrant had been first returned before him. Moreover, as the provision with reference to the return of the warrant in the same section expressly distinguishes between a judge of a United States court and a United States court, it would seem to follow, on just rules of construction, that this distinction must run throughout the section." 110 Fed. 953.

We think that this is a sound construction of the statute.

The decision of the supreme court in Fong Yue Ting v. U. S., 149 U. S. 698, 13 Sup. Ct. 1016, 37 L. Ed. 905, was handed down May 15, 1893, after the decision in U. S. v. Gee Lee; and it seems to us that it contains expressions which are inconsistent with the view of the statute taken by the circuit court of appeals for the Ninth circuit.

Thus it was said (pages 728, 729, 149 U. S., page 1028, 13 Sup. Ct., page 918, 37 L. Ed.):

"The designation of the judge, in general terms, as 'a United States judge,' is an apt and sufficient description of a judge of a court of the United States, and is equivalent to or synonymous with the designation in other statutes of

the judges authorized to issue writs of habeas corpus or warrants to arrest persons accused of crime. Rev. St. §§ 752, 1014.

"When, in the form prescribed by law, the executive officer, acting in behalf of the United States, brings the Chinese laborer before the judge, in order that he may be heard, and the facts upon which depends his right to remain in the country be decided, a case is duly submitted to the judicial power; for here are all the elements of a civil case,—a complainant, a defendant, and a judge,—actor, reus, et judex. 3 Bl. Comm. 25; Osborn v. Bank, 9 Wheat. 738, 819, 6 L. Ed. 204. No formal complaint or pleadings are required, and the want of them does not affect the authority of the judge or the validity of the statute."

Throughout this opinion the reference is always to a "judge." In the dissenting opinion of Mr. Justice Brewer, page 742, 149 U. S., page 1029, 13 Sup. Ct., page 920, 37 L. Ed., there is clear evidence that that learned judge found a distinction between a "judge" and a "court." The reference to Rev. St. §§ 752, 1014, indicates that a distinction is to be made between a district judge and a district court.

In Carper v. Fitzgerald, 121 U. S. 87, 7 Sup. Ct. 825, 30 L. Ed. 882, it was held that, upon habeas corpus proceedings before the circuit judge for the Fourth circuit at chambers, no appeal lies to the supreme court from an order of the circuit judge, sitting as a "judge," and not as a "court," discharging a prisoner brought before him on a writ of habeas corpus; that an order of the judge that the papers be filed or recorded in the circuit court does not make his decision as "judge" a decision of the "court." See, also, Harkrader v. Wadley, 172 U. S. 148, 162, 19 Sup. Ct. 119, 43 L. Ed. 399.

In U. S. v. Duell, 172 U. S. 576, 589, 19 Sup. Ct. 290, 43 L. Ed. 564, it was said concerning appeals in the District of Columbia:

"By the acts of 1839 and 1852 an appeal was given, not to the circuit court of the District of Columbia, but to the chief judge or one of the assistant judges thereof. who was thus called on to act as a special judicial tribunal. The competency of congress to make use of such an instrumentality or to create such a tribunal in the attainment of the ends of the patent office seems never to have been questioned, and we think could not have been successfully. The nature of the thing to be done being judicial, congress had power to provide for judicial interference through a special tribunal."

See, also, U. S. v. Coe, 155 U. S. 76, 15 Sup. Ct. 16, 39 L. Ed. 76; Lambert v. Barrett, 157 U. S. 697, 15 Sup. Ct. 722, 39 L. Ed. 865; McKnight v. James, 155 U. S. 685, 15 Sup. Ct. 248, 39 L. Ed. 310; In re Lennon, 150 U. S. 393, 14 Sup. Ct. 123, 37 L. Ed. 1120.

In U. S. v. Clarke, 1 Gall. 497, 499, Fed. Cas. No. 14,804, Judge Story, sitting in the First circuit, said:

"The district judge is not the district court, though he is the presiding officer thereof. A court is not a judge, nor a judge a court. A judge is a public officer, who, by virtue of his office, is clothed with judicial authorities. A court is defined to be a place in which justice is judicially administered. It is the exercise of judicial power by the proper officer or officers at a time and place appointed by law. The officers exist independent of the exercise of such appointed jurisdiction, though the court may not, in general, be holden independent of its officers. This last position, however, is not always strictly true; for a court is considered so much as an assemblage of mere abstract judicial powers, to be organized and exercised at stated times and places, that by our laws it may be adjourned without the presence of a

judge. There are many powers which the officers of a court, collectively or individually, may and do exercise, exclusive of their organization as a court. Indeed, what they shall do in either the capacity of an officer or of a court depends exclusively upon the provisions of the law.

"It is not true, therefore, that every act done by the district judge is, in point of law, the act of the district court. In some instances powers are confided to him which he may exercise either in court, or, by virtue of office, out of court. In other instances powers are given to him in one capacity which are denied in the other. The power to issue writs of habeas corpus is an example of the former kind; the power of the district judge to appoint and hold special district courts, of the latter kind. In his capacity as a court he may try certain offenses and suits of common law and admiralty jurisdiction. In his capacity as a judge he has no such authority. In his capacity as district judge he is a constituent member of this court. It would be absurd to contend that when he holds the circuit court he yet holds the district court. Nay, the very case before us is a very strong illustration of the distinction. As a district court, or, rather, holding the district court, he has no cognizance of the offense of piracy. It is expressly excluded by statute, and consequently the complaint would have been coram non judice. As a judge of the United States he has complete cognizance for the purpose of commitment for trial. If, therefore, the offense had been laid, as committed before the district court, on a trial or complaint for piracy, it would have been a fatal objection. It cannot be necessary to pursue the argument on this head further. It is utterly insupportable."

We think it clearly the intention of congress to confer upon the district judge, as a special tribunal, authority to determine by summary proceedings the facts upon which an appellant resists deportation proceedings. The statute evidently contemplates proceedings of a summary character, not admitting the delays usually attending ordinary litigations. See Roberts v. Reilly, 116 U. S. 92, 93, 6 Sup. Ct. 291, 29 L. Ed. 544. On the one hand, the officers of the government, in the performance of an executive duty, are not to be unduly delayed. On the other hand, in favor of his rights, the Chinese person is to have a speedy hearing. It is very certain that the officers of the government cannot be delayed indefinitely by the claim of appeal; that at some time it must fail for lack of prosecution; and that it is within the power of the district judge, in his sound discretion, to determine when that time has arrived. There is nothing in this record to show that the action of the district judge in dismissing the appeal was improper.

The refusal by the circuit court to grant the petition for the writ of habeas corpus on the ground that the case had been properly dismissed was right, although we do not agree with the reasons assigned by that court for the dismissal.

It was urged upon us at the hearing that the substantial fact at which this court should look in this case, and which should override all technical objections, is that a person was to be deported from the United States without a hearing. We have given due consideration to the argument that the right should not be defeated by too technical rules of procedure, and are inclined to adopt a liberal rule wherever it appears that a person has seasonably asserted and prosecuted his right. In the present case, however, it appears by the record that on May 13, 1901, the defendant below was arraigned, sworn, and examined, and that the hearing was adjourned to May 23d; that on May 23d the hearing was resumed;

and that the appellant was represented by counsel. It therefore appears by the record that the appellant had full opportunity to be, heard, and that he was heard, and that, after a hearing, it was found that he was a person not entitled to be within the United States. Presumptively, this finding was correct. It cast upon the appellant the duty of proceeding with some degree of diligence to seek the benefit of a further hearing. It has been found by the district judge that the delay was not excusable, and must be construed as an abandonment of the appeal.

Whether or not there were irregularities in the form of commitment, it is unnecessary to inquire. As was said by Mr. Justice Gray in Nishimura Ekiu v. U. S., 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146:

"A writ of habeas corpus is not like an action to recover damages for an unlawful arrest or commitment, but its object is to ascertain whether the prisoner can lawfully be detained in custody; and, if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment."

Upon the record before the circuit court it appeared that the, petitioner for the writ was a person not entitled to be within the United States, and liable to be deported; that he had no right to be discharged from custody, but only to be placed in charge of the officers of the United States for deportation. The circuit court therefore properly refused the petition for the writ of habeas corpus.

The decree of the circuit court is affirmed.