# UNITED STATES v. CHIN DONG YING.

## (District Court, D. Massachusetts. February 10, 1916.)

## No. 1667.

1. ALIENS ⊚―32—DEPORTATION OF CHINESE—APPEALS—EFFECT.

Under Chinese Exclusion Act Sept. 13, 1888, c. 1015, § 13, 25 Stat. 479, providing, relative to the deportation of Chinese, that any Chinese person convicted before a commissioner may appeal to the judge of the District Court, the taking of an appeal vacates the commissioner's order of deportation, and leaves the case as if it had never been tried and no order of deportation had ever been entered, as the appeal is to be tried de novo and transfers the whole case to the District Court as if the proceedings had been originally instituted in that court.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊚―32.]

2. ALIENS ⊚―32—DEPORTATION OF CHINESE—APPEALS—DISMISSAL.

While the District Court, in dismissing for want of prosecution an appeal by a Chinese person from a commissioner's order of deportation, might have incorporated into the order of dismissal an order for the deportation of such person, where no such order of deportation was made, the order of dismissal constituted a final judgment, and did not operate to restore to full power and effect the commissioner's order of deportation, which had been vacated by the appeal.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊚―32.]

3. ALIENS ⊚―32—DEPORTATION OF CHINESE—APPEALS—DISMISSAL.

As an order dismissing for want of prosecution an appeal by a Chinese person from a commissioner's order of deportation finally disposed of the case, it could not be restored to the docket at a subsequent term, even with the consent of the United States attorney.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊚―32.]

4. ALIENS ⊚―32—DEPORTATION OF CHINESE—AUTHORITY OF UNITED STATES COMMISSIONERS.

An appeal by a Chinese person from an order of deportation made by F., a United States commissioner, was dismissed for want of prosecution, and thereafter, F. having died, H., another commissioner, made an order reciting the dismissal of the appeal, and ordering that the deportation order of Commissioner F. be executed. *Held*, that Commissioner H. had no authority to make this order, and it was of no effect, even assuming that Commissioner F. could have made such an order, as the case was not pending before Commissioner H., and no statute gave him jurisdiction on the death of Commissioner F.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊚―32.]

5. ALIENS ⊚―32—DEPORTATION OF CHINESE—WEIGHT AND SUFFICIENCY.

In a proceeding to deport a Chinese person on the ground that he was found in the United States in violation of the Exclusion Acts, evidence *held* to show that he was one of two persons arrested on deportation proceedings in 1897 and adjudged entitled to enter the United States on the ground that he had been born there.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ⊚―32.]

6. ALIENS ⊚―32—DEPORTATION OF CHINESE—CONCLUSIVENESS OF JUDGMENT.

Where a Chinese person, claiming to have been born in the United States and to have been taken to China when he was three years old, was

⊚―For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

arrested on deportation proceedings upon his return to the United States, and adjudged entitled to enter the country upon the ground that he was born there, the government was estopped by such judgment from further deportation proceedings against him.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 84, 92–95; Dec. Dig. ☞32.]

Proceeding by the United States to deport Chin ·Dong Ying, alias Wok Hong Wang. From a commissioner's order directing his deportation, Chin Dong Ying appeals. Order of deportation denied.

Everett Flint Damon and John ,H. Casey, both of Boston, Mass., for appellant.

Lewis Goldberg, Asst. U. S. Atty., of Boston, Mass.

MORTON, District Judge. This is an appeal by a Chinese from an order of United States Commissioner Fiske directing his deportation on the ground that he was found in the United States in violation of the Chinese Exclusion Act. The order was entered on November 16, 1904, and the appeal was allowed and was entered in this court on November 16, 1904. On April 15, 1909, this court entered the following order: "The above-entitled case is hereby dismissed from the docket for want of prosecution." On May 4, 1911, United States Commissioner Fiske having died since the entry of his order of deportation, United States Commissioner William A. Hayes 2d made the following entry in his (Mr. Hayes') docket:

"In the Matter of Chin Dong Ying, alias Wok Hong Wang.

"In the above-entitled case, the said appeal having been dismissed for want of prosecution by the Honorable Frederic Dodge, Judge of the United States District Court for the District of Massachusetts, it is now, to wit, May 4, A. D. 1911, ordered that the deportation order of November 16, A. D. 1904, a certified copy of which is annexed thereto, be executed forthwith.

"[Seal]          William A. Hayes 2d, United States Commissioner."

Nothing further was done in the matter until June 1, 1914, when, upon an agreement between the petitioner and the United States attorney, as follows:

"It is hereby agreed that the above-entitled case may be restored to the docket, and that a trial may be had upon the merits when reached"

—this court ordered that the case be restored to the docket for trial upon the merits when reached. On June 19, 1914, the petitioner was ordered to recognize with surety to prosecute his appeal, and did so; and the case was continued from term to term until November 30, 1915, when it was heard in ·open court; the question whether it was properly upon the docket being ' at that time raised by the United States and reserved by the court.

The first question is one of jurisdiction, and lies at the threshold of the case. It relates to the effect of the order of dismissal, and involves the nature and effect of an appeal in cases like this. The appellant contends, in substance, that the taking and entering of the appeal vacated the commissioner's order of deportation, and that the order of dismissal, unaccompanied by an order of deportation in this court, either did not dispose of the case so finally as to prevent it from being

heard on the merits at this time, or, if it did, that the order of the commissioner having been vacated, and no other such order having been entered, he cannot be deported in these proceedings. The government contends that the effect of the appeal was to suspend the order of deportation pending the hearing of the case on the appeal, and that the effect of the dismissal for want of prosecution was to restore the order of deportation by the commissioner to full force and effect.

[1] The statute under which the appeal was taken is section 13 of the act of 1888 (25 Stat. 476), and is as follows:

"But any such Chinese person convicted before a commissioner of a United States court may, within ten days from such conviction, appeal to the judge of the District Court for the district."

The language is broad, and free from any qualification or limitation, and the right of appeal given by it should be equally broad and free, unless there is something in the nature of the proceedings which calls for a different construction. I do not think there is. The intention was, it seems to me, to give to the appellant the right to have the whole case retried in another court—as said in Liu Hop Fong v. U. S., 209 U. S. 453, 461, 28 Sup. Ct. 576, 52 L. Ed. 888, tried "de novo" —and disposed of there without any regard to the proceedings before the commissioner. In other words, the appeal transfers the whole case to the District Court, where it is to be dealt with for all practical intents and purpose as if the proceedings had been originally instituted in that court. U. S. v. Wong Ock Hong (D. C.) 179 Fed. 1004. There is no provision for remanding the case to the commissioner, and such a course is not a necessary incident to, or condition of, an appeal. The District Judge has no supervisory power over the commissioner in the matter, except such as pertains to its appellate jurisdiction; and that, as already observed, is confined to the trial and disposition of the appealed case in his own court. If an order of deportation is entered by the commissioner, and is affirmed, as it may be, by the appellate court, it takes effect, not as the order of the commissioner, but as the order of the appellate court, and whatever mandate is necessary to carry it into effect is issued by that court, and not by the commissioner; and such is the established practice in this district. It follows, it seems to me, that the effect of taking and entering the appeal was to vacate the order of deportation entered by the commissioner, and to leave the case just as if it never had been tried, and no order of deportation ever had been entered. See Murdock, Appellant, 7 Pick. (24 Mass.) 303, 320, 321 (original paging); Ball v. Burke, 11 Cush. (65 Mass.) 80, 82; Commonwealth v. Oakes, 151 Mass. 394, 395, 24 N. E. 210; Derick v. Taylor, 171 Mass. 444, 446, 50 N. E. 1038; 2 Cyc. 971, C, and notes.

The conditions under which an appeal may be taken vary greatly in different cases and jurisdictions; but the principles of law by which, apart from statute, the effect of an appeal upon the proceedings in the court below is to be determined should be the same under a given state of facts everywhere. Statutory appeals in actions at law—and this appeal is of that nature—are so old in American law, and so widespread, and the principles governing them are so well settled, that it

seems probable Congress had them in mind in passing the statute under consideration. In Massachusetts, for instance, such appeals go back to the statute of 1783 (chapter 42), which in turn was founded on an earlier provincial statute of 1697 (chapter 8). The provisions for appeal in these old statutes are upon the point under discussion closely analogous to that in the statute involved in this case, and they have for several generations received the same construction which I have placed upon it. Cases supra. This case differs from writs of error, or exceptions, or appeals in admiralty, probate, or equity, and other instances where the cause remains in the lower court, or is remanded to it for further proceedings, in accordance with the opinion of the appellate court. Hovey v. McDonald, 109 U. S. 150, 3 Sup. Ct. 136, 27 L. Ed. 888; Slaughterhouse Cases, 10 Wall. 273, 19 L. Ed. 915; Bronson v. La Crosse R. R. Co., 1 Wall. 405, 17 L. Ed. 616; Penhallow v. Doane's Adm'r, 3 Dall. 54, 1 L. Ed. 507; Packman's Case, 6 Co. Rep. 18b; Archer v. Hart, 5 Fla. 234.

It should be noted, although it would perhaps be taken for granted, that the appeals referred to in these decisions are appeals rightfully taken and duly entered, where the conditions of appeal have been complied with. An appeal that is wholly unauthorized can have no effect; and the dismissal of an appeal for the reason, for instance, that the appellant was not a person entitled to appeal, leaves the decree of the court below as if not appealed from. Cleveland v. Quilty, 128 Mass. 578. In this case the appeal was well and rightly taken and duly entered in this court.

[2-4] There remains on this branch of the case the question as to the effect of the order of dismissal. The statute imposes on any Chinese person arrested under it the burden of showing that he is lawfully entitled to remain in the United States; and I think that it would have been competent for the court to have incorporated into the order of dismissal an order for the deportation of the appellant. This is in effect what was done in the case of Chow Loy v. U. S., 112 Fed. 354, 50 C. C. A. 279, as appears from an examination of the papers. In Fong Yue Ting v. U. S., 149 U. S. 698, 729, 13 Sup. Ct. 1016, 37 L. Ed. 905, it is said:

"If no evidence is offered by the Chinaman, the judge makes the order of deportation, as upon a default."

As above stated, no such order of deportation was made in this case; the order was of dismissal merely, and nothing more. There can be no question, I think, that it was within the power of the court to make such a disposition of the case, and that the order of dismissal constituted a final judgment. Jackson v. Ashton, 10 Pet. 480, 9 L. Ed. 502; Snell v. Dwight, 121 Mass. 348. I also think that that order did not and could not operate to restore to full power and effect the order of deportation which had been vacated by the appeal. Drummond v. Husson, 14 N. Y. 60; Derick v. Taylor, supra. The case, having been finally disposed of, could not be restored to the docket at a subsequent term, even with the consent of the United States attorney. Jackson v. Ashton, 10 Pet. 480, 9 L. Ed. 502; U. S. v. Mayer, 235

U. S. 55, 70, 35 Sup. Ct. 16, 59 L. Ed. 129; Minnesota v. Northern Securities Co., 194 U. S. 48, 62, 63, 24 Sup. Ct. 598, 48 L. Ed. 870. The order of deportation by Commissioner Hayes seems to me to have been ultra vires, and to be of no effect. The case was in no sense pending before him, and no statute has been referred to under which he could take jurisdiction on the death of Commissioner Fiske, assuming, for the sake of the argument, that Commissioner Fiske could himself have made such an order.

It follows, it seems to me, that as the case stands there is no order of deportation, and that the court has no authority to enter one, and had no authority to restore the case to the docket.

It is possible, however, that this conclusion may be wrong, and, inasmuch as the case has been fully heard, I proceed to consider it upon the merits.

[5, 6] The petitioner testifies that his correct name is Wok Hong Wang; that Chin Dong Ying is his marriage name; that he was born in San Francisco, and lived there until he was 3 years old, when he went to China with his parents; that he returned to this country at the age of 23 years, and entered, with his brother, via Burlington, Vt. He contends that at that time he was arrested on deportation proceedings, was tried upon them, and was adjudged entitled to enter the United States upon the ground that he had been born here. If so, the issue raised by the subsequent deportation proceedings was, concededly res judicata in his favor.

It clearly appears that two Chinamen were arrested by the United States authorities in Vermont upon deportation proceedings, and were tried before United States Commissioner Johnson at Burlington, on October 22, 1897. The petitioner claims that he was one of them. They were represented by David J. Foster, a member of the bar, who testified before Commissioner Fiske in these proceedings as follows:

"Q. Whether or not the defendant in this case was the person whom you defended as Wok Hong Wang? A. It is my best judgment that he is the man. I met him for the first time since the trial when I was in Boston to attend the hearing in this case some weeks since, early in September [1904], I believe; I recognized him as the man for whom I appeared at that time. I would say that my remembrance of the case was quite vivid. There were two brothers. The other one, not the defendant, got into Burlington two or three days before this one. They got separated in Montreal. They were a pair of very bright boys. I thought, when my attention was called to it, that I would be able to identify those boys. I think this is the boy. It is my best judgment that he is one of them. * * * Q. The defense was that the defendant was born in this country? A. Yes. * * * Q. From his appearance, have you no question that he is the same man? A. I have no question he is the same man."

Commissioner Johnson's record shows that Wok Hong Wang was discharged, the ground of discharge having been birth in this country.

Mr. Foster's testimony was given in 1904, about 7 years after the occurrence. Moy Loy, who in 1897 was United States interpreter at Burlington, also testified before Commissioner Fiske, a transcript of his testimony being read here by agreement, that this petitioner is one of the persons who was at that time tried before Commissioner Johnson.

229 F.—52

Just before deportation proceedings were instituted against the petitioner in 1904, Inspector McCabe found in his possession a certificate, signed by Commissioner Johnson, in the name of Wok Hong Wang. Annexed to this certificate was a photograph of the petitioner, which had been improperly added to it. This photograph bore the impression of a seal, which was a counterfeit of Commissioner Johnson's seal. In all other particulars the certificate was admittedly genuine; the commissioner's signature, the principal seal, the name of the person to whom it was issued, and the date, were as made by Commissioner Johnson.

It is satisfactorily proved that about the year 1902 the petitioner was living in Marlboro, Mass., working in a laundry. At that time the certificate referred to was seen in his possession by Mr. Crotty. Mr. Crotty knew the petitioner under the name shown on the certificate. Mr. Quinn had known the petitioner under that name in 1899 or 1900. The certificate was taken from the petitioner by Inspector McCabe in 1904, and has since been in the government's control.

It thus appears that, within 2 or 3 years after the hearing before Commissioner Johnson, the petitioner was known under the name stated in the certificate, and within 4 or 5 years after the hearing the Johnson certificate is shown by reliable evidence to have been in the petitioner's possession. Plainly some Chinese person under the name of Wok Hong Wang was heard and admitted by Commissioner Johnson. Either the petitioner is that person, or that person disappeared, and this petitioner had assumed his name and secured the certificate within a few years thereafter. The first alternative seems to me the more probable one; and this view is greatly strengthened by the direct evidence of Mr. Foster (which is unimpeached), and by that of Moy Loy, that this petitioner is the man who was heard and discharged. The fraudulent alteration of the certificate, which otherwise is certainly genuine, by the addition of the photograph and the counterfeit seal, though suspicious, is not sufficient, even assuming the addition to have been made by the petitioner, to overcome the other evidence establishing his identity.

Upon all the evidence, I find that the petitioner is the person whose case was heard by Commissioner Johnson, and to whom the certificate was originally issued; that the question of his right to be in the United States has been heard and adjudicated in his favor; and that, if the case is properly before me, the United States is estopped by that judgment from further deportation proceedings against him.

For the reasons stated, no order can be made in these proceedings.