NOFSINGER *et al.*, *Appellants*, v. HARTNETT, *Administrator*.

**Appeal Bond** : SURETY : LIABILITY. Where a surety enters into an appeal bond, conditioned that if the judgment of the circuit court of St. Louis county be affirmed by the St. Louis court of appeals, to which the cause is appealed, he will comply with and perform its judgment, and the judgment is reversed by the St. Louis court of appeals, but on appeal by the opposite party to the Supreme Court, the judgment of the St. Louis court of appeals is reversed and that of the circuit court is affirmed, such surety will be liable on the bond, if as should be done, the mandate of the Supreme Court is sent to the court of appeals ordering it to enter a judgment affirming that of the circuit court, and such mandate is obeyed, as the judgment of the Supreme Court would then become that of the court of appeals. But the surety will not be liable on such bond if the mandate of the Supreme Court be sent directly to the circuit court, as was done in this case, for there would then be no judgment of the court of appeals affirming that of the circuit court.

**Per Sherwood, J.**

**Appeal Bond** : SURETY : LIABILITY. Where a surety enters into an appeal bond conditioned that if the judgment of the trial court be affirmed by a certain and named court to which alone the cause is appealed, he will comply with and perform the judgment of the latter court, and that court reverses the judgment appealed from, such surety will not be bound or affected by the judgment of a higher court not named or referred to in such bond.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*B. D. Lee* for appellant.

The judgment of an appellate court, by operation of law, becomes the judgment of the court below, and, in its force and effect, is as binding and conclusive upon that court as though it had been rendered of its own motion. *Archer v. Hart et al.*, 5 Fla. 234; *Gardner v. Barney*, 24 Howard Pr. 467; *Robinson v. Plimpton*, 25 N. Y.

487; *Hinckley v. Kreitz*, 58 N. Y. 583, 587; *Smith v. Crouse*, 24 Barb. 433; *Babbitt v. Finn*, 101 U. S. 7; Bayliss on Sureties, p. 172; Brandt on Suretyship, par. 401; *Cook v. King*, 7 Bradwell 549; *Crane v. Weymouth*, 54 Cal. 476.

*E. T. Farish* for respondent.

(1) An appeal bond is like any other contract, and must be construed by the same principles of law. Obviously the bond had no reference to the affirmance of the judgment by the Supreme Court; but, on the contrary, was carefully worded to cover any action taken by the court of appeals, the appellate tribunal named in the condition of the bond. (2) Where the condition of the bond is not restricted to the action of the court of appeals, but general as to any judgment that might be rendered by any appellate tribunal, a different rule would prevail. *Babbitt v. Finn*, 101 U. S. 7; *Smith v. Crouse*, 24 Barb. 435; *Gardner v. Barney*, 24 Howard Pr. 467; *Robinson v. Plimpton*, 25 N. Y. 487. (3) Because the Supreme Court reversed the judgment of the court of appeals, it does not follow that the judgment of the former court became the judgment of the latter, and thereby affirmed the judgment of the circuit court, and the case of *Archer v. Hart*. 5 Fla. 234, cited by appellant, supports such doctrine. (4) Respondent's answer to the claim made by the plaintiff upon him is, *"non in hoc federe veni;"* A party cannot be construed into a liability in which he never entered. (5) This case must be determined by the construction given to the language employed in the bond sued on, and the meaning of the terms of the bond are as above given and hereinbefore mentioned. 25 N. Y. 488; *Fenwick v. Rives*, 4 Stewart & Porter (Ala.) 269; *Burks v. Brown*, 4 Bibb (Ky.) 572; *Morgan v. Selman*, 6 Ga. 440. (6) The legislature held the same view, and amended the law, changing the condition of the bond (R. S., sec. 3713), prescribing a different and

broader condition in appeal bonds from that previously required. Laws 1871, p. 50, sec. 45.

SHERWOOD, J.—Plaintiff recovered judgment in the St. Louis circuit court against John Ring, and he appealed to the St. Louis court of appeals, giving James Reilly, Hartnett's intestate, as one of his sureties on his bond, which was conditioned as follows : "The condition of the above obligation is such, that whereas, John Ring has appealed from the judgment rendered against him, and in favor of F. B. Nofsinger *et al.* in the circuit court of St. Louis county ; now said appellant shall prosecute his appeal with due diligence to a decision in the St. Louis court of appeals, and shall perform such judgment as shall be given by the St. Louis court of appeals, or such as the St. Louis court of appeals may direct the circuit court of St. Louis county to give, and if the judgment, or any part thereof, be affirmed, will comply with and perform the same so far as it may be affirmed, and pay all damages and costs which may be awarded against him by the St. Louis court of appeals, then this obligation to be void, otherwise to remain in full force and effect."

When the cause reached the court of appeals the judgment was reversed and the cause remanded, but on plaintiff's appeal to the Supreme Court the judgment of the court of appeals was reversed and that of the circuit court affirmed. Since that time Reilly has deceased, and Hartnett has become his administrator. This action was brought against the administrator on the bond mentioned and on proof of the facts already stated, the circuit court found in favor of, and rendered judgment for defendant, and on appeal this judgment was affirmed by the court of appeals. The only question, therefore, is the correctness of the ruling which denied the plaintiff recovery on the bond in suit. In other words, the result of this suit determines whether a surety having entered into a bond conditioned that if the judgment of the trial court

be affirmed by a certain and *named court* to which alone
the cause is appealed, and that court reverses the judg-
ment appealed from, such surety is bound or affected by
the judgment of a higher court, not named or referred to
in such bond.   The familiar rule respecting the restricted
liability of a surety, is so firmly established, so thoroughly
imbedded in the very fundamentals of the law, that it
would seem at first blush that no other conclusion than
that reached by the circuit court and court of appeals,
would conform to that well known rule.   And unless it
be made to appear that the liability of a surety on the
conditions of an appeal bond, differs from his liability on
any other contract which he may make, then that liability
is to be determined and settled, and only to be determined
and settled, by the rule prevailing in the ordinary con-
tract of suretyship.

What is that rule ?   None other than this :   "That
he is the favorite of the law, and has a right to stand
upon the strict terms of his obligation."   Brandt on
Suretyship, sec. 97 and cases cited ; Baylies on Sureties,
144, 145, 260, and cases cited.   In the case of *Ludlow v.
Simond*, 2 Caines Cases 1, the chancellor in delivering
the opinion in the court below, had ruled in favor of the
surety, remarking :   " A surety cannot be carried beyond
his contract ; the contract made by the parties must be
judged of and not another substituted in its stead ; it can-
not be varied without his consent, and a surety for defi-
nite engagements shall not be extended to an indefinite
one."   2 Term Rep. 372 ;   7 Term Rep. 256 ;   2 Bro. Ch.
Cas. 579 ; 2 Ves., Jr., 540.   And Spencer, J., on the hear-
ing of the appeal, when the decree of the chancellor was
affirmed, said :   " The authorities on this subject are very
uniform ; they speak a language not to be misunderstood,
and, without detaining the court by an enumeration of
them, I am fully justified by those cited, in saying that,
both in law and equity, contracts involving the rights of
sureties, will so far as respects *them*, receive a more rigid
and less liberal construction, than between the original

contracting parties." And in the same case, Kent, C. J., in speaking of the same topic, said : "It is a well settled rule, both at law and in equity, that a surety is not to be held beyond the precise terms of his contract, and, except in certain cases of accident, mistake, or fraud, a court of equity will never lend its aid to fix a surety beyond what he is fairly bound to at law.   This rule is founded on the most cogent and salutary principles of public policy and justice.   In the complicated transactions of civil life, the aid of one friend to another, in the character of surety or bail, becomes requisite at every step.   Without these constant acts of mutual kindness and assistance, the course of business and commerce would be prodigiously impeded and disturbed.   It becomes, then, excessively important to have the rule established, that a surety is never to be implicated beyond his specific engagement.   Calculating upon the exact extent of that engagement, and having no interest or concern in the subject matter for which he is surety, he is not to be supposed to bestow his attention to the transaction, and is only to be prepared to meet the contingency, when it shall arise, in the time and mode prescribed by his contract.   The creditor has no right to increase *his* risk without his consent ; and cannot, therefore, vary the original contract, for that might vary the risk."

And Story, J., in *Miller v. Stewart*, 9 Wheat. 680, in discussing the same subject, said: "Nothing can be clearer both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract.   To the extent and in the manner, and under the circumstances pointed out in his obligation, he is bound, and no further.   It is not sufficient that he may sustain no injury by a change in the contract, or that it may even be for his benefit. He has a right to stand upon the very terms of his contract ; and if he does not assent to any variation of it, and a variation is made, it is fatal."   So also in *Lang v. Pike*, 27 Ohio St. 498, Ashburn, J., said : "No principle

is more firmly settled in this state than this, that sureties
may stand upon the very terms of a statutory bond or
undertaking.    So clearly has this doctrine been an-
nounced and acted upon, that it may be regarded as en-
tering into the condition of such an undertaking, that it
will not be extended by the courts beyond the necessary
import of the words used.    It will not be implied that
the surety has undertaken to do more, or other, than what
is expressed in such obligation."    And in that case the
learned judge quotes with approval the remarks of Reed,
J., in the case of *State v. Medary*, 17 Ohio 565, where he
says :    "The bond speaks for itself, and the law is that it
shall so speak, and that the liability of the sureties is
limited to the exact letter of the bond.   Sureties stand upon
the words of the bond, and if the words will not make them
liable, nothing can.    There is no construction, no equity
against sureties.    If a bond cannot have effect according
to its exact words, the law does not authorize the court
to give it effect in some other way in order that it may
prevail."    *Lang v. Pike, supra,* was one where the under-
taking for appeal reads :    "Now, therefore, I, L. H. Pike,
of Toledo, do hereby, pursuant to the statute in such
case made and provided, promise and undertake that the
said appellants, if judgments be adjudged against them
on the appeal, will satisfy such judgment," etc.    Ash-
burn, J., in commenting upon this undertaking, observed :
"The record shows that Joseph and Sabina Pfeffer ap-
pealed jointly from a judgment rendered against them
jointly ; and Pike promised and undertook if *such* a
judgment was rendered against *them* in the appellate
court, he would pay *such* judgment if *they* failed to do
so.    The length and breadth of his promise in the under-
taking on appeal was that he would pay any judgment
rendered against both of them—not separately, but jointly.
He cannot, then, be held for the separate default of
Joseph.    To hold differently would be enlarging the terms
and changing the conditions of the undertaking, thereby
virtually making, by construction, a new undertaking for

the parties, and holding Pike responsible for conditions not in his contract."

This last case establishes the position that the same rigorous rule prevails as to the contract of a surety contained in an appeal bond as in any other contract whatsoever, which, he, as surety, may make, and the same may be said of *Winston v. Rives*, 4 Stewart and Porter, 269, where sureties bound themselves in an appeal bond from the county court to the *circuit court*, conditioned that if the judgment was affirmed in the circuit court, that then they would pay the same, and the judgment was affirmed in that court, but the cause was afterwards taken by new bond, etc., to the Supreme · Court, where the judgment was again affirmed, and it was ruled that the obligation of the sureties extended no further than the *circuit court*. Lipscomb, C. J., remarking: "There is a principle that pervades the whole doctrine, on the relation subsisting between the creditor and a security debtor, that is, that the obligation shall by no liberal intendment, be carried, in the smallest degree, beyond the undertaking. And again, that there is no moral obligation on the security, beyond, or superadded to the legal obligation. * * * His obligation being essentially a legal one, it would follow that if not liable in strict law, that he is not liable at all. * * * What was the extent of Winston and Fenwick's obligation to Rives? Their undertaking was to render them liable to him on the happening of an event dependent on the action of the circuit court, and could not be dependent on an event still more remote, unless their case can be made an exception to the general rule. It would be a sufficient answer, if they were to rest on the contract alone, and say our obligation runs no further, and we are not liable beyond the express terms of the obligation by which we became bound. It may, however, readily be perceived why one would be surety on a writ of error bond to the circuit court, when he would be wholly unwilling to be bound to wait the result of a decision in the Supreme Court."

To the same effect is *Morgan Co. v. Selman*, 6 Ga. 440, and the rule is further exemplified in *Mix v. Singleton*, 86 Ill. 194. That was a case where an appeal was taken from an order dissolving an injunction, the appeal bond being conditioned that the obligors should duly prosecute their appeal and should "pay said judgment, costs, interest and all damages caused by wrongfully suing out said injunction, in case the judgment and decree should be affirmed," and the sureties were sued for breach of the conditions of the bond, and it was ruled that they were liable for " all damages *caused* by wrongfully *suing out* said injunction," but that they were not liable for such damages as plaintiffs sustained in consequence of *keeping the injunction in force by the appeal*. Scott, J., remarking : "The question arises, what damages are embraced in that condition of the bond ? Construing the words as they are ordinarily understood, it seems plain such damages as had been *' caused'* by the wrongful suing out of the injunction were all that were within the condition of the bond. * * * No condition of the bond obligated defendants to pay such damages as plaintiffs might sustain by reason of the injunction being kept in force by their appeal. Any construction that would make defendants responsible for such damages as might thereafter be sustained, would be to enlarge the undertaking of the sureties on the bond beyond anything expressed in the bond itself. The measure of the liability of sureties is fixed by the terms of the instrument they may sign and we do not understand such undertaking can be enlarged or varied by , judicial construction. That would impose upon a mere surety obligations he had never assumed and perhaps would have been unwilling to take upon himself."

The cases cited by plaintiffs from New York are by no means analagous to this one, for there the "undertakings" were conditioned in *general* terms, and were not applicable to the judgment of any *particular court* as is the

case here.   Section 335 of the code of that state, passed upon in those cases, simply provides "that if the judgment appealed from be affirmed," etc.   This point is made prominent in the case of *Robinson v. Plimpton*, 25 N. Y. 484, where Allen, J., says :   "In terms the undertaking does not restrict the liability of defendants to the contingency of an affirmance of the judgment by the *Supreme Court.*   The condition may as well refer to an affirmance by the judgment of *any* court to which the cause may go by appeal or the final decision of the action in the court of last resort."   And Selden, J., significantly remarks :   "If the statute had authorized an undertaking that the judgment should be paid if affirmed by the *general* term, and the undertaking had been framed accordingly, I am inclined to think that the defendants' objection although technical merely, would have been well taken."   In *Smith v. Crouse*, 24 Barb. 435, this matter was also considered.   There a judgment was rendered before a magistrate, and an appeal taken to the county court, an undertaking was entered into, conditioned that : " If judgment shall be rendered " against the appellant and execution thereon be returned unsatisfied, etc.   And the county court reversed the judgment, but on appeal to the supreme court that judgment was reversed and that of the justice was affirmed, it was held that the sureties were liable, but the intimation is very broadly given that if after the word "rendered " the additional words had been inserted, " *in the county court*," a different conclusion must have been reached.

   In *Doolittle v. Dininny*, 31 N. Y. 350, the observation made in *Smith v. Crouse, supra,* as to those additional words is spoken of with approval, the case being similar in all its incidents.   As to the case of *Crane v. Weymouth*, 54 Cal. 476, the action was *ejectment* and the defendant retained possession of the land, and by the terms of the obligation the sureties bound themselves under section 945 of the code, that if the judgment be

affirmed or the appeal dismissed the defendant would "pay the value of the use and occupation of the property from the time of the appeal until the delivery of the possession thereof," etc., so that of necessity the sureties were liable on the bond, and by force of its express terms, and that case, therefore, was correctly decided, and its language must be construed with reference to its own peculiar and controlling circumstances. In *Babbitt v. Finn*, 101 U. S. 7, the judgment was *affirmed* in every appellate court and the condition of that bond was general, "that if the said Edward Burgess shall prosecute said writ of error to effect and answer all damages and costs, and if he fail to make good his plea." Of course, Burgess failed to make his plea good, failed to prosecute his writ of error to effect when the judgment of the district court was affirmed in the circuit court, and, therefore, a breach of the bond occurred at that time and in that court. In *Archer v. Hunt*, 5 Fla. 234, the action was on a *forthcoming bond* conditioned that certain slaves should appear before the judge of the circuit court, from time to time, as might be required, to abide the decision of the circuit court and its further order ; and there was no intermediate appellate court. No doubt can arise as to the correctness of that ruling, but what greater relevancy that case has to the present one than a suit on an attachment or replevin bond, I am unable to see.

Testing the question under discussion by the authorities cited and by the principles which they declare, I am of the opinion now, as I was upon the argument, that the judgments of the lower courts are in strict conformity to those principles. And, in this connection, it should not be forgotten that this is the first suit of its kind that has been brought in this state based upon such facts as are here presented. It is pretty good evidence of what the law is, when such eminent counsel, such as St. Louis contains, have by tacit concurrence refrained for nearly ten years in bringing such a suit as the present, when many

bonds, similar to the one at bar, have been executed, when the results of litigation have been the same as already cited. Besides, the statute as it existed at the time the appeal in question was taken (Laws 1871, p. 50, sec. 45), is far different now from what it was then. Now its provisions are so broad as to place the sureties in an appeal bond in precisely the situation plaintiffs desire to place the defendant in this case. R. S. 1879. sec. 3713. This amendment is of value as a legislative construction of the statute prior to the amendment; but at the time mentioned the statute had not been conformed to the existence of the St. Louis court of appeals, and only provides for a bond conditioned that an appellant from the circuit court should prosecute his appeal to the Supreme Court, etc.

But such a bond as that was, of course, not applicable to the new state of things; and it is extremely doubtful if a bond altogether ignoring the existence of an intermediate appellate court to which the cause must of necessity go, would have operated as a *supersedeas* of the judgment appealed from. This consideration, in my opinion, greatly strengthens the position of the surety; he has, with studious care, limited his responsibility and docked his statutory obligation, and by the letter of that obligation alone is his liability to be measured and his cause adjudged. This must be so, or else all former adjudications on the doctrine of suretyship must be for naught held and esteemed. The ultimate hazard which the surety agreed and bound himself to incur, was that relating to a *single appeal* to a *certain court;* he did not bind himself further than that; he did not agree to incur the risk of a *series of appeals;* and nothing short of unwarranted judicial construction can thus enlarge his limited liability. Planting himself, as a favorite of the law, on the narrow domain of restricted liability, he may point with unshaken confidence to the strict law of his contract, and say it is not " so nominated in the bond."

Nofsinger v. Hartnett.

I am for affirming the judgment. All concur in the result, except Norton J., who dissents.

HENRY, C. J., AND RAY AND BLACK, JJ., CONCURRING. —We concur in the affirmance of the judgment of the court of appeals, but not for the reasons assigned, either by that court, or in the foregoing opinion, but on the ground that the only judgment of the court of appeals in the original cause, is that reversing the judgment of the circuit court. If, on the reversal of the judgment of the court of appeals, a mandate had been sent from this court to that court, as it should have been, directing that court to enter a judgment affirming that of the circuit court, and the mandate had been obeyed, the liability of the surety on the appeal bond would have been within the express terms of his obligation. But, in a suit on that bond, as the record now stands, where is to be found a judgment of the court of appeals, affirming that of the circuit court? That such a judgment had been rendered would be a necessary averment in a suit on that bond, and one that the plaintiff would have to prove before he could recover.

There is no legal fiction that the judgment of the Supreme Court, reversing one rendered by the court of appeals, becomes the judgment of the latter court. While it would have been the duty of the court of appeals to enter such judgment as the mandate of this court required, yet this court having passed by that court, and sent its mandate to the circuit court, no judgment of the court of appeals has ever been rendered except that reversing the judgment of the circuit court. That which ought to have been done will be considered as having been done, is a principle of equity, sometimes successfully invoked in equity proceedings, but inapplicable to a case at law, in which a surety is sued upon his obligation of which there has in legal strictness been **no** breach.