AMI C. STITT et al. v. KATIE A. STITT, Appellant.

Division One, June 29, 1907.

1. **SUBSTITUTION: Fraudulent Sale of Testate's Property: Executrix as Purchaser.** Where the executrix brought about the sale of land, burdened with a deed of trust by the trustee, in order that she might become the purchaser thereat, and bid the amount of the debt, and became the purchaser, the decree setting aside the sale, in so far as it substitutes her to the rights of the mortgagee under the deed of trust, and to the extent that she lifted that burden from the estate, does equity.

2. **ADMINISTRATOR'S SALE: Under Mortgage: Purchase by Executrix: Fraudulent.** The husband died leaving one hundred

and twenty acres of land. By will he gave eighty acres to his wife for life and in that she had, besides, a homestead. The other forty was encumbered with a mortgage for five hundred dollars and as to that he died intestate, leaving other debts amounting to seven hundred and fifty dollars, with no personal estate. She obtained an order from the probate court to sell this forty, and was offered fourteen hundred dollars, but asked sixteen hundred dollars, and made no real effort to sell it, and let the order sleep. When the mortgage became due at once wrote to the mortgagee to sell it under the deed of trust, in order that she might become the purchaser, and at the sale bought the land for five hundred and fifty dollars. *Held*, that the executrix, after the order of the court directing her to sell the land to pay the debts, was a trustee in the most exacting sense, and evidently permitted her self-interest to ride down her duty to the estate, which was to use it to pay decedent's debts, and she will not be permitted to buy the land under such circumstances, leaving her husband's creditors no way by which to have their claims paid, and the sale is set aside as fraudulent.

Appeal from Daviess Circuit Court.—*Hon. J. W. Alexander,* Judge.

AFFIRMED.

*Rollin J. Britton, Wm. C. Gillihan* and *Nat. G. Cruzen* for appellant.

(1) Plaintiffs have no standing in a court of equity because defendant, Katie A. Stitt, was the executrix of Jacob A. Stitt and as such could become the purchaser of lands of which the said Jacob A. Stitt died intestate, when the same was sold under foreclosure of a deed of trust. Section 166, Revised Statutes 1899, prohibiting an executor from purchasing the real estate of an estate, has reference only to probate sales. Dillinger v. Kelley, 84 Mo. 561; Briant v. Jackson, 99 Mo. 585; Walcott v. Hand, 122 Mo. 621; Markwell v. Markwell, 157 Mo. 326. (2) Inadequacy of price realized at a trustee's sale is no reason for setting aside the trustee's deed. Markwell v. Markwell, 157 Mo. 326; Harlin v. Nation, 126 Mo. 97. (3) An executrix is not

a trustee of the real estate of her testate, nor a trustee the real estate of which the testator died intestate, for the heirs; and as against the heirs she may purchase for herself at a foreclosure sale. Dillinger v. Kelley, 84 Mo. 567. (4) The executrix has nothing to do with the real estate of which the testator died intestate, but it descends directly to the heirs, except an inchoate right to sell for the payment of debts. Dillinger v. Kelley, 84 Mo. 561. (5) It did not devolve upon the executrix to attend the foreclosure sale, and if she had not and the land had sold to any other purchaser for the price at which she bought it she would not have been liable on her bond to the estate. Therefore, if she attended the sale and bought the land, she did so on the footing of the merest stranger—free to buy, or free to forbear. Dillinger v. Kelley, 84 Mo. 565.

*Leopard & Hicklin* for respondent.

(1) When appellant obtained the order of sale from the probate court, and had the land appraised, she became a trustee as to that land for the benefit of the estate, and was a trustee at the time she procured the sale by the trustee under the deed of trust, and becoming the purchaser at a little more than one-third of the reasonable value of said land, the court below certainly was justified in divesting her of all title in and to said land, and vesting the same in the estate of the deceased, reimbursing her for all money paid out by her at said sale by the trustee, with interest, and requiring her to account for rents. (2) The chancellor found as a matter of fact that defendant delayed in making sale of said real estate until it was sold under deed of trust, with the fraudulent intent and purpose of becoming the purchaser thereof, and the chancellor having the witnesses before him was enabled to judge as to their credibility, and this court will defer largely to that finding.

LAMM, J.—Plaintiffs are the parents and brothers and sisters of Jacob A. Stitt, deceased. Defendant is his widow and executrix of his last will and testament. From a decree vesting the title to the northwest quarter of the northeast quarter of section 13, township 61, range 29 (hereafter called tract C) in Daviess county (subject to a certain right of subrogation in her favor) out of her and into the estate of said Jacob A. Stitt, defendant appealed.

No question is made over the pleadings or that the decree is not responsive thereto. In effect and on broad lines, defendant's contention is that the case is without equity. This contention seeks the facts alone. Attending to them, the case made is this:

Jacob A. Stitt died childless in Daviess county June 2nd, 1901, testate, seized of 120 acres of land, to-wit, the northwest quarter of the northwest quarter of section 18, township 61, range 28 (hereinafter called tract A) and the northeast quarter of the northeast quarter (called tract B.) and the northwest quarter of the northeast quarter (tract C) of section 13, township 61, range 29, leaving the plaintiffs as his heirs of blood kin, and the defendant as his widow.

On the 13th day of March, 1900, he formally executed his will, whereby he requested that his debts be paid out of other personal property rather than his household goods—the latter he bequeathed to his wife. If there was not personal property enough to pay his debts, he directed that a certain sixty-acre tract he then owned, known as the "Mooney Land," should be sold and that the proceeds of such sale over and above his debts at large and a certain mortgage debt should go to his wife. Tracts A and B he devised to his wife for her lifetime and at her death they went to his lawful heirs (the plaintiffs). The widow was nominated as executrix by the will, which said will was duly probated, and defendant qualified as executrix and took upon

herself the burden of administering upon the estate early in 1901.

Presently after making his will, testator sold the "Mooney Land" and purchased tract C, so that he died seized, as said, of tracts A, B and C. Tract C was encumbered for $500 at the time testator purchased it and remained so encumbered at the date of his death, he dying intestàte as to that tract. Said incumbrance was a deed of trust to one Bartlett, trustee, in the nature of a mortgage, securing a note to one Knowles for $500 to become due May 1st, 1903, interest at six per cent, payable annually. Tract B was subject to a deed of trust to secure to the heirs of one of the plaintiffs, Ami C. Stitt, the sum of $825, to become due on his death and to bear no interest. We take it tract A was clear. Decedent resided on tract A with defendant at the date of his death, and the record shows she continued to reside there and claimed tracts A and B as her homestead; but what the value of these tracts is and whether her homestead right has been adjudicated and a homestead set off to her do not appear.

Presently, in May, 1901, the executrix applied to the probate court of Daviess county for an order of sale of tract C to pay debts. At that time there had been allowed against the estate $726 in claims, constituted debts at large and assigned to the first and fifth classes—one of the plaintiffs being a creditor. It seems the widow claimed all the personal property as special dower and as hers absolutely, which claim being allowed, exhausted the personal assets. The probate proceedings ripened into an order of sale in August, 1901. Tract C was appraised at $1250. The petition prayed an order of private sale to be made subject to the Knowles incumbrance, and the resulting order made provision of like effect. Armed with this order of sale, the executrix made some efforts to sell tract C for $1600, to-wit, at $40 per acre. We take it, however,

that figure included the mortgage debt—at that time $500 plus a small increment of accrued interest. About this time a coldness sprang up between her and her husband's people. The record does not bear out the theory that even a half-hearted attempt was made to sell tract C at any figure obtainable. Some of the persons to whom she offered it were willing to buy at, say, $35 an acre; but she excused her refusal to take less than $40 an acre by standing stiffly on that price as the worth of the land. It seems tract C was really worth $40 an acre for a clear title and was rising in value. Not making any sale under the order of the probate court, matters dragged along until in May, 1902. At some time, pending the life of the order of sale, the executrix conceived the plan of allowing it to lapse, and, instead, to have a sale made under the Knowles deed of trust. That deed of trust provided the principal debt should be due on default of an interest payment. Accordingly, this power was seized hold of, an installment of interest defaulted on May 1st, 1902, and promptly on that day she sent the following letter to Bartlett Brothers of St. Joseph, Missouri (one of said Bartletts being the trustee in the Knowles deed of trust):

"Gallatin, Mo., May 1, 1902.

"Messrs. Bartlett Bros., St. Joseph, Mo.

"Dear Sirs:

"My husband, now deceased, purchased certain land from his brother, Samuel G. Stitt, on which you hold mortgage for $500.

"There is no money in the estate with which to pay the interest now due on this loan (May 1st), and inasmuch as the land covered by this loan must be sold to pay the debts of the estate and such a sale, if made by order of the probate court, would preclude me from becoming a purchaser, because of the fact that I am administratrix of the estate, and I am confident that if I am precluded from taking part in the sale that the land

will be sold for less than its value; I request that you
proceed to foreclose your mortgage for your client at
once. Please conduct the matter through Rollin J.
Britton, who is my attorney, and he will see that your
interests are taken care of at the sale. If I become the
purchaser of the land I shall want to renew the loan.

"Yours truly,<br>
"KATIE A. STITT."

Prior to the above letter her agent sent the fol-
lowing communication to Bartlett Brothers:

"Gallatin, Mo., April 19, 1902.

"Bartlett, Bros., St. Joseph, Mo.

"Dear Sir:—Your letter concerning the 'Stitt to
M. A. Knowles' trust deed received, and I am very de-
sirous of having this matter attended to earlier than
your reply would indicate.

"The record says that Herschel Bartlett is trustee
in this matter.

"It is a matter of much importance to the estate
that we should be able to get a proper consideration
for this land. It is a hard struggle to save something
out of the estate for the widow.

"It is a matter in which I have much concern and
I trust that you will kindly assist me and the estate in
the matter. I am confident that the loan will be immed-
iately returned to you. Yours truly."

As the result of these letters, a trustee's sale was
put on foot and then made on June 6th, 1902, at which
the defendant purchased tract C for $550—a sum about
one-third of the true value of the land and barely
enough to pay the mortgage debt, accrued interest and
costs. She paid her bid out of her own funds, received
a deed, recorded the same and thenceforward planted
herself on that deed and claimed tract C as her own
property.

205 Sup—11

The oral testimony, taken in connection with the foregoing letters, showed beyond all question that the sale was brought about by defendant for the purpose of acquiring title, and no other. The trustee testified that his noticeable promptness in advertising on the very heels of a default of an interest installment was to accommodate defendant. It was shown, too, that defendant's agent superintended the insertion of the advertisement in the newspaper and arranged the terms. There was no bidder at the sale but defendant. We take it no attempt was made to notify any of the plaintiffs or any of the creditors of the change in defendant's program from the original plan of selling under the court's order, subject to the deed of trust, to pay debts, to the plan as consummated of selling under the trust deed in order that she might buy. So, too, it appears that defendant ceased all effort to execute the court's order, as soon as the trustee's sale got on foot. It seems, however, that one of the plaintiffs, William Stitt, in some way found out the evening before the sale that such sale was on foot, and, without consultation with the other heirs, came to the county seat on the same train with defendant with a purpose of bidding. The trustee was expected at about one o'clock on the Wabash "flyer." William made inquiries of defendant's agents and was told that the trustee would be in about one o'clock. In point of fact, however, he arrived at ten. We cannot make out the precise hour the sale was made; but there is uncontradicted testimony that William did not receive satisfactory information about the time of sale. Out of abundant caution he went to the courthouse where the sale was to take place and danced attendance there watching until lunch time, when pinched, may be, a bit with hunger, he went to lunch; and during his absence at lunch the sale came off. Going to the office of defendant's agents later, he found them engaged in writing the trustee's deed. He

gives one version of what was said and done there, and defendant's agents give another; but neither bears on the legal phases of this case, and may be put aside.

When defendant was on the stand the following questions were asked and answers given:

"Q. You claim this land as your individual property? A. Yes, sir.

"By the Court: What has become of the debts? A. They are still unpaid.

Q. Amounting to how much? A. Well, I don't know exactly.

"Q. This paid the mortgage on the land with the interest and costs, did it not, in full? A. Yes, sir.

"By the Court: I am talking about the unsecured debts; they remain unpaid? A. Yes, sir.

"Q. And you are claiming the other eighty acres as a homestead? A. Yes, sir."

On her cross-examination the record shows the following:

"Q. You say in this letter that this land was being sold to pay the debts of the estate and such a sale made by order of probate court would preclude you from becoming a purchaser, because of the fact, 'I am the executrix of the estate;' was it your object, when you had the letter written, to have the land sold that you might protect the estate or that you might become the purchaser for your own benefit? A. Well, I thought it was protecting the estate as well as myself, my own interest.

"Q. Was it your intention to have this sold under the mortgage, so that you might become the purchaser in order to bring as much as the land was worth? A. How?

"Q. Was it your intention to have the land foreclosed under the mortgage in order that you might become the purchaser and make the land bring as much

as it was worth? A. I don't understand what you mean.

"Q. Was it your intention to make the land bring all that it was worth, when you wrote this letter? A. Yes, sir, that was what I tried to do; I tried to sell it for what I thought it was worth.

"By the Court: Did you make any effort to sell it after it was advertised under this mortgage, under the Bartlett mortgage, did you notify anybody it was about to be sold at that time? A. I don't remember whether I did or not.

"Q. Did you notify any of the creditors it was going to be sold under that trust deed? A. I talked with Dr. Dunham, was one person.

"Q. Was he the party that held the debt? A. He was one of the doctors.

"Q. One that held the larger claim? A. I believe his is the largest.

"Did you tell him that you wanted to become the purchaser? A. No, sir, I don't know that I did.

"Q. What did you tell Dr. Dunham? A. Well, Doctor was anxious that the doctor's bill should be paid, and we was talking concerning that, and we did not know how the land would sell, who would be here to bid against it, because it had been advertised.

"Q. Did you not tell Dr. Dunham his debt would be paid out of the sale of this land? A. Not at that time.

"Q. When did you tell him? A. I told him that before, I supposed it would be.

"Q. Did you talk with any of the other creditors about it? A. No, sir.

"Q. Who are the other creditors besides Dr. Dunham? A. There is several."

The chancellor found in effect that tract C "was amply sufficient to pay all the debts of Jacob A. Stitt, deceased, including the five hundred dollars mortgage

debt on said tract and the expense of administration.''
He found in substance that the defendant, as executrix,
purposely delayed making a sale under the court's or-
der until tract C was sold under the deed of trust; and
that all this was done ''with the fraudulent intent and
purpose of becoming a purchaser of said'' tract C at
trustee's sale. Having so found, a decree followed that
she be divested of title to tract C; that title be vested in
the estate of said Jacob A. Stitt; that defendant be sub-
rogated to the rights of Knowles, *cestui que trust;* that
she be reimbursed the amount of her bid at the sale,
with interest thereon at the rate of six per cent per an-
num from the date of sale; and that she account for
rents, etc. Such is the case on the record.

Did the chancellor seek equity and do it? We
think so. Because:

In so far as the decree subrogated defendant to the
rights of Knowles under the deed of trust, no fault can
be found with it. They who seek equity must do equity.
Decedent was seized of tract C, subject to that encum-
brance. His estate, therefore, may only retake the title
*cum onere.* Thereby it is made to stand in its cast off,
former shoes, which is well enough. Equity does
nothing grudgingly or by halves. Its out-stretched
arm corrects, but with loving kindness withal. Hence
to the extent the widow lifted the burden of that incum-
brance from the estate by her bid, to that extent she
should be made whole. The rule of substitution is one
of pure benevolence, and the facts and circumstances of
this case afford a typical opportunity for the applica-
tion of that rule.

Defendant seeks to bring herself within the doc-
trine of those cases in which an administrator, owing
no duty and having no power to protect the interests of
creditors and heirs in the real estate of a decedent and
dealing at arm's length with all concerned, buys at
an execution or foreclosure sale. Dillinger v. Kelley,

84 Mo. 561, is a sample of such cases; but that case and no well-considered case, carefully read, promulgates any rule inimical to this decree. Here the defendant was a trustee in the most exacting sense; for she had power and she had duty and had assumed the role of using the power in performance of that duty. Not only was she armed under the order of sale with power to do that duty, but in this instance ability to perform lay at her door, ready to her hand. Not only so, but she was placed in a most delicate and anxious position —a position watched by a chancellor with a solicitous eye, to be weighed and considered with a piercing and distinguishing judgment; because duty and power of performance were set over against self-interest. She set one in one eye and the other in the other. The love of money is the root of all evil; and when one is bound in a confidential relation it is of the very essence of things to see to it that the strident and clamorous voice of self-interest does not drown out the still, small voice of duty and conscience.

"No one" says WILLIAMS, J., in Tuggles v. Callison, 143 Mo. l. c. 536, "will be permitted to purchase and hold property as his own, where he has a duty to perform in relation thereto inconsistent with his position as a purchaser on his own account, and so the cases all hold." Such purchase becomes of a poisonous character. The temptation existing, the correlative duty to remove it exists. In the case at bar the executrix could have sold tract C under the court's order for enough to have paid the mortgage debt, together with all the debts at large of the estate and the cost of administration. With one hand she put away from her this duty, with the other she clutched the gain of violating that duty. Defended by the bulwark of a homestead claim to the residue of the real estate, she left the heirs and creditors to help themselves as best they may, with tract C canceled as a debt-paying factor.

Under the facts uncovered the trustee's sale was conceived and consummated by her for purposes single to herself. To that end she dallied and coquetted with the situation as executrix under the court's order of sale until such time as the evil seed she planted and watered could grow to flower and fruitage in the trustee's deed, thereby doing what she set out to do, viz., appropriate to herself the only debt-paying asset available and making it impossible for her to render a just account of her stewardship. It is needless to cite authority to sustain the self-evident proposition that equity will grant relief by taking away from her a title tainted in that way. That was what the chancellor did below, and what he did meets our approval.

The judgment is affirmed. All concur.*