BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

MARCH TERM, 1914.

## A. J. LAWSON, Appellant, v. W. H. MUSE, Respondent.

Springfield Court of Appeals, April 14, 1914.

1. CONTRACTS: Of Sale: Joint and Several: Severable: Terms Construed. A written contract which provides that the undersigned agreed to pay to the person named in the contract $100 per share for 18 shares of stock in a horse, the amount to be represented by "severable notes," *held* a several contract, each signer being liable for the amount designated by the words "one share" or "one-half share" etc., following his name.

2. ———: ———: Stipulation of Time for Payment: : Premature Action. Where a contract for the purchase of a horse provided that the specified price should be represented by "joint and severable notes" one-half due in one year and one-half due in two years, an action against one of the purchasers before the expiration of a year was premature, such purchaser not having repudiated the contract.

3. PROMISSORY NOTES: Several: Severable: Synonymous Words. "Several" and "severable" are synonymous words when applied to promissory notes.

(35)

Lawson v. Muse.

Appeal from Howell County Circuit Court.—*Hon. W. N. Evans*, Judge.

AFFIRMED.

*M. E. Morrow* and *J. N. Burroughs*, for appellant.

(1) Under the law, failure or refusal to execute the notes tendered according to the contract, matured the obligation to pay the full amount subscribed by defendant and gave appellant a legal right to sue. C. Aultman v. Daggs, 50 Mo. App. 280. (2) The notes tendered were in strict compliance with the terms and conditions of the contract. The terms "joint and severable" as used in the contract are synonymous with the terms, "jointly and severally" as used in the notes. If there is any distinction between the terms employed, then the language used in the notes tendered to be executed, would go further toward making it an individual obligation on the part of each maker, than would the terms used in the contract. Anderson's Law Dictionary, p. 946; Black's Law Dictionary, p. 1088.

No brief for respondent.

FARRINGTON, J.—The record presented to us in this case fails to disclose on what theory the trial court arrived at the judgment rendered, and the respondent has failed to shed any light on the question by not briefing the case.

The petition was filed before a justice of the peace on a contract. It states that this contract was signed and executed on May 9, 1912. There is an admission in the abstract showing that the suit was brought before the justice on April 12, 1912. The opening sentence of the abstract of the record shows that the case was lodged on appeal from the justice's court, in the circuit court on May 9, 1912. In the transcript filed in our clerk's office it is shown that the judgment was ren-

dered by the justice of the peace on March 9, 1912. The case was finally tried in the circuit court in April, 1913, and the court there directed the jury to find for the defendant, and entered a judgment in favor of the defendant. The prayer of the petition was for one hundred dollars.

The undated contract sued on is as follows:

"CONTRACT.

"We, the undersigned farmers and breeders, parties of the first part, wishing to improve our stock, agree to pay to A. J. Lawson, party of the second part, ($100) one hundred dollars per share for eighteen shares of stock in one Percheron stallion, named Gascon. The amount aforesaid to be represented by joint and severable notes due as follows: One-half, or nine hundred dollars, due one year from date. And the balance, or nine hundred dollars, due two years from date. Said notes to draw 6 per cent interest from date.

"It is further stipulated that the party of the second part agrees to furnish Certificate of Registration in the American-French Draft Horse Association.

"Signed: J. A. Muse, 1 share; J. E. Muse, ½ share; S. P. Crouch, ½ share; W. H. Muse, 1 share; Veniel J. Rund, ½ share; F. C. Hunter, ½ share; L. E. Files, ½ share; W. H. Threlkeld, 1 share; James French, 1 share; W. H. Parker, ½ share; C. O. Reed, ½ share; T. G. Bridges, 1 share; Chris Lauenberg, ½ share; W. A. Mooney, ½ share; James Bell, ½ share; W. L. Stroop, ½ share; J. W. Vogan, ½ share; W. P. Woolford, ½ share; Isaac Amerman, 1 share; G. B. Collins, ½ share; R. J. Benson, 1 share; Len Huff, ½ share; R. D. Stone, 1 share; L. D. Bridwell, 1 share; J. T. Boak, ½ share."

The plaintiff introduced evidence to the effect that the defendant signed the foregoing contract and that plaintiff delivered the horse to the parties signing the contract and furnished the certificate of registration required, and that plaintiff subsequently offered two

notes of nine hundred dollars each, dated December 20, 1911, due respectively one and two years after date, in which the makers were to promise jointly and *severally* to pay the amounts named therein aggregating eighteen hundred dollars, which the defendant herein refused to sign. As stated, these notes were dated December 20, 1911, and when presented to the defendant they had already been signed by eight of the parties whose names were signed to the contract. It is evident that December 20, 1911, was the date on which the plaintiff intended to require defendant to begin his obligation on the notes called for in the contract. But the agent for the plaintiff who was handling this deal testified that defendant refused to execute the note presented to him (presumably for nine hundred dollars); that he (the witness) has forgotten just what the defendant said about it but that he refused to sign it. It will be noted that the contract calls for eighteen shares of one hundred dollars each to be paid in notes due in one and two years of nine hundred dollars— "joint and *severable*." It does not say two notes of nine hundred dollars each. And when the parties signed the contract each one indicated after his name the amount he propoesd to share in the purchase of the horse. It will be noted that the full eighteen shares were not subscribed for under the contract in writing. The plaintiff's agent, however, explains this by saying that he agreed to take the share and a half which had not been signed up for.

There is very good authority to hold that this contract, although in its body calling for "joint and severable" notes, is, owing to the way it is signed and the purpose disclosed, in fact a several agreement. [Chicago Bldg. & Mfg. Co. v. Graham et al., 78 Fed. 83.] At least, the contract is so ambiguous as to permit oral testimony to explain it. So far as this case is concerned, the plaintiff has treated the contract as a several agreement because he has sued on the contract for

one hundred dollars representing the cost of one share, the amount placed opposite defendant's name in the contract. Having done so, his proof should show on what ground the defendant refused to sign the notes presented. If the contract was a several contract, the defendant had a perfect right to refuse to sign the two nine hundred dollar notes as such act would have bound him for the full amount. If, on such presentation, he entirely repudiated the contract, it being a several contract, he would be indebted to the plaintiff for one hundred dollars provided he did not have some good ground on which to repudiate the entire agreement. Aultman & Co. v. Daggs, 50 Mo. App. 280, l. c. 289 and cases cited in support of that part of the opinion in that case. If it is a several contract and the plaintiff so treated it and the defendant did not repudiate the entire contract, then it is readily seen that this suit was prematurely brought because the defendant would have one year within which to pay fifty dollars and two years within which to pay the balance, and the suit was commenced within a few months after the date on which the two nine hundred dollar notes were presented for his signature. In this condition of the record the plaintiff must be held to have failed to make a case against the defendant, and that the trial court cannot be convicted of error in giving the requested peremptory instruction to find for the defendant. [Martin v. Hurley, 84 Mo. App. 670, 675.] As was held in the case of Dillinger v. Kelley, 84 Mo. 561, 569, we are not of the opinion that the judgment rendered and affirmed here would preclude the plaintiff from bringing another action as this judgment is based on an action prematurely commenced; and with the understanding that this affirmance will not prejudice any rights growing out of the contract in question, the judgment will be allowed to stand.

From appellant's brief we gather that there must have been some weight given one way or another to

the meaning of the words "severable" and "several," the contract calling for joint and "severable" notes, and the notes actually presented being joint and "several." These words mean the same thing, according to leading lexicographers, and though the word "several" is most generally used, an interchange of the words does not serve as an excuse for failing to carry out a contract.

The judgment is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.